**Rickey E. BOGGESS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2168.**

Court of Appeals of Alaska.

Dec. 8, 1989.

---

Lamond R. Mills, Las Vegas, Nev., and Timothy G. Middleton, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Rickey E. Boggess was convicted, following two separate jury trials, of multiple counts of sexual abuse of a minor in the first and second degree, one count of attempted sexual abuse of a minor in the first degree, one count of indecent exposure, and two counts of tampering with a witness in the first degree. Superior Court Judge Victor D. Carlson sentenced Boggess to serve a composite term of forty-three years, with fifteen years suspended. Boggess appeals his convictions and sentence. We remand for additional proceedings.

## FACTS

In the summer of 1985, Boggess began sexually abusing his eleven-year-old stepdaughter, R.M. Initially, his conduct involved fondling. Subsequently, Boggess sexually penetrated R.M. On separate occasions, he used his finger, a plastic cigar case, and a douche applicator. On another occasion, Boggess attempted to have sexual intercourse with R.M.

R.M. reported the abuse on July 22, 1985. While R.M.'s report of abuse was being investigated, Boggess told a co-worker, Eugene Smith, that he had fondled R.M.'s breasts and sexually penetrated her with a cigar case. When Smith was later subpoenaed to testify before the grand jury, Boggess asked him to "forget about the admissions he had made." Boggess also spoke with his wife about her anticipated testimony before the grand jury. He instructed her to plead the fifth amendment or break down and cry if she were asked for damaging information about him.

Based on evidence of Boggess' sexual abuse and of his efforts to influence the testimony of his wife and Smith, the grand jury returned an indictment charging Boggess with two counts of sexual abuse of a minor in the first degree, two counts of sexual abuse of a minor in the second degree, two counts of indecent exposure, and two counts of tampering with a witness in the first degree.

The prosecution subsequently dismissed one of the indecent exposure charges. Boggess was tried before a jury on the remaining charges. The jury convicted him of the two second-degree sexual abuse charges and of one of the two witness

tampering charges. It deadlocked on the other counts.

Through testimony presented by R.M. and Boggess at the trial, the state learned for the first time of the incident of sexual abuse in which Boggess sexually penetrated R.M. with a douche applicator. Based on that incident, the state secured a supplemental indictment charging one additional count of sexual abuse of a minor in the first degree. That charge was joined with the charges upon which the first jury had deadlocked, and Boggess was retried. The second jury found Boggess guilty of all charges.

## GRAND JURY VIOLATIONS

### A. Unauthorized Presence before the Grand Jury

■ On appeal, Boggess raises several claims relating to the grand jury proceedings that resulted in his initial indictment. He first contends that error occurred because the prosecutor's two-year-old son was in the room during a portion of the grand jury proceedings. The state concedes that the child was brought into the grand jury room while one witness was questioned and while the next witness, Boggess' wife, was called. Boggess' wife, after being sworn, invoked her right to remain silent, and the grand jury recessed for the day.

The state further concedes that the child's presence violated Alaska Criminal Rule 6(k), which provides:

The prosecuting attorney, the witness under examination, interpreters when needed, and a deputy clerk of the court for the purpose of recording the proceedings may be present while the grand jury is in session. No persons other than the jurors shall be present while the grand jury is deliberating or voting.

The state argues, however, that the violation of Criminal Rule 6(k) was minor and did not require dismissal.

This court has previously declined to require automatic dismissal for violations of Criminal Rule 6(k). *See Soper v. State*, 731 P.2d 587, 591–92 (Alaska App.1987).

We have held that there must be some indication that the violation contributed to the return of the indictment, or that it resulted in unfair prejudice. *Id.*

In the present case, the presence of the prosecutor's child before the grand jury was relatively brief, and the jury did not hear any important testimony while the child was in the room. Because the child was only two years old, his presence posed no realistic threat to the secrecy of the grand jury proceedings.

Although it is conceivable that under some circumstances the unauthorized presence of a young child before the grand jury could result in undue emotional impact on the jury's deliberation, that possibility is remote in the present case. R.M., the victim in this case, was eleven years old; there seems little likelihood that grand jurors would draw any association between R.M. and the prosecutor's child. Moreover, the grand jury recessed immediately after the child's unauthorized presence and did not reconvene or vote on the indictment until approximately two weeks later. On these facts, we hold that the violation of Criminal Rule 6(k) did not require dismissal of Boggess' indictment.

### B. Improper Grand Jury Evidence

Boggess next cites several evidentiary errors before the grand jury, which he contends warranted dismissal. Specifically, Boggess complains that the grand jury was improperly allowed to hear evidence that he had abused R.M. physically and sexually and that he had recently contacted R.M. in violation of a court order. Boggess also complains that the prosecution mischaracterized the nature of his sexual contact with R.M. on one occasion.

■ Even if it was improper for the grand jury to hear the challenged evidence, however, that impropriety would only warrant dismissal if the remaining evidence was insufficient to support Boggess' indictment or the improper evidence was likely to have had an overriding influence on the grand jury's decision. *See, e.g., Patterson v. State*, 747 P.2d 535, 537 (Alaska App. 1987). The prosecutor's case before the

grand jury was extremely strong and certainly sufficient to support the indictment. It does not appear that the evidence that Boggess complains of would have had any appreciable effect on the grand jury's decision. Under the circumstances, any error was clearly harmless and did not require dismissal.

### C. Improper Intent Instruction

■ Boggess further argues that the prosecutor failed to instruct the grand jury that specific intent is a necessary element of sexual assault in the first degree. Boggess mistakenly relies on *Anderson v. State*, 749 P.2d 369 (Alaska App.1988), which involved a prosecution under statutory definitions of "sexual contact," and "sexual penetration" that have since been revised. Under the current definitions of those terms, specific intent is no longer an element of sexual abuse of a minor. *Compare* former AS 11.81.900(b)(51) and (52) (defining "sexual contact" and "sexual penetration") *with* current AS 11.81.900(b)(52) and (53) (defining the same terms). *Compare also Van Meter v. State*, 743 P.2d 385, 391 (Alaska App.1987) (construing current statutory provisions) *with Flink v. State*, 683 P.2d 725 (Alaska App.1984) (construing former provisions). We find no error.

### D. Telephonic Testimony

Before presenting the new charge of sexual abuse to the grand jury following Boggess' first trial, the prosecutor obtained an order from the superior court authorizing R.M. to testify by telephone from her new home in Las Vegas.

At the time of the second grand jury proceeding, Alaska Criminal Rule 38.1(a) specifically authorized the superior court to allow telephonic testimony, subject to compliance with the procedures set out in Alaska Civil Rule 99(b)(3).[1]

The prosecutor substantially complied with the procedural requirements outlined in Civil Rule 99(b)(3). At the start of the grand jury session, the prosecutor recited the case name and number, and indicated that R.M. was living in Las Vegas and that she would be testifying by telephone. The other requirements listed in the rule are superfluous because R.M. was the only person participating by telephone.

■ Nevertheless Boggess claims that allowing R.M. to testify before the grand jury by telephone created the risk that she might be in the presence of an unauthorized person while she testified, a violation of Criminal Rule 6(k). The concern voiced by Boggess is not without merit but affords no basis for invalidating the supplemental indictment in this case. Nothing in the rules governing telephonic testimony or in Criminal Rule 6 governing procedures for grand jury hearings can be construed as prohibiting R.M. from testifying by telephone. Although it would have been preferable for the prosecution to have established for the record that no one was present with R.M. during her testimony, the rules did not require the prosecutor to do so.

■ Nor are there any indications in the present case that the prosecution's failure to affirmatively establish R.M.'s compliance with Criminal Rule 6(k) had any actual effect on the grand jury's actions. R.M.'s grand jury testimony was consistent with the testimony she had already given at Boggess' first trial. Her description of Boggess' act of abuse—inserting a douche applicator into her vagina—was consistent

---

**1.** Criminal Rule 38.1(a) provided, in relevant part:

> In any proceeding at which the defendant's presence is not required, the court may in its discretion order telephonic participation. The court shall follow the procedures set out in Civil Rule 99(b)(3).

Civil Rule 99(b)(3) provided:

> (b) *Procedure.* The following procedure must be observed concerning telephone participation in court hearings:

(3) Upon convening a telephonic proceeding, the judge shall:
(i) Recite the date, time, case name, case number, names and locations of parties and counsel, and the type of hearing;
(ii) Ascertain that all statements of all parties are audible to all participants;
(iii) Give instructions on how the hearing is to be conducted, including notice that in order to preserve the record speakers must identify themselves each time they speak.

with Boggess' own testimony at the first trial. During that trial, Boggess specifically admitted the conduct and attempted to explain it as an attempt to educate R.M. in the use of a douche. In short, we find no impropriety in R.M.'s telephonic testimony.

## WITNESS INTIMIDATION

Boggess claims that dismissal of the charges against him was warranted because the prosecution discouraged two witnesses from testifying in his defense.

After reporting that she had been sexually abused by Boggess, R.M. was placed in the foster care of Mr. and Mrs. C. While living with Mr. and Mrs. C., R.M. and the C.'s daughter, B.C., took a car belonging to another family member and had an accident. They attempted to flee the scene but were stopped. As the girls awaited the police, R.M. purportedly told B.C. to claim that she had been sexually abused by her father, because if she did, the police would "forget everything else."

B.C. did in fact tell the police that she had been sexually abused. As a result, the state placed B.C. in foster care, initiated a Child in Need of Aid (CINA) proceeding, and opened a criminal investigation. The CINA proceedings were subsequently terminated and the investigation closed. No charges were ever filed against B.C.'s father.

Before Boggess' first trial, Boggess' counsel informed the court of his intent to call B.C. and her mother as witnesses in order to discredit R.M.'s testimony. The court ruled that their testimony would be admissible. Later, however, during an *in camera* conference, defense counsel informed the court that he had decided not to call the C.'s as witnesses, because the prosecutor had told him that B.C.'s claims of sexual abuse were still under investigation. Counsel told the court that he did not believe that he could ethically expose B.C. or her mother to cross-examination by the state as long as there was a risk of charges being brought against Mr. C.

Counsel went on to indicate that he had been told that the prosecutor had called Mrs. C. and asked to speak with B.C., apparently about her proposed trial testimony. According to counsel, however, Mrs. C. told the prosecutor that B.C. did not intend to testify, whereupon the prosecutor replied something to the effect of "good, because I would hate to have to" get into the details of B.C.'s claims of sexual abuse. In providing this information to the court, Boggess' counsel did not claim that the prosecutor had intimidated or attempted to intimidate B.C. or her mother.

In response to defense counsel's comments, the prosecutor informed the court that, although the state had terminated the CINA proceeding, it never considered criminal investigations of sexual abuse complaints formally closed until the statute of limitations expired. The prosecutor stated that she personally believed B.C. had been abused and "would love to prosecute Mr. C." The prosecutor indicated that if B.C. or her mother testified and if their cross-examination yielded new evidence, the state would prosecute B.C.'s father.

Boggess' counsel then told the court that he would reconsider his decision not to call B.C., since it appeared from the prosecutor's remarks that B.C.'s original report of sexual abuse was not actively under investigation. Ultimately, neither B.C. nor her mother was called as a witness for the defense at the first trial. Boggess' counsel made no further mention of the matter, and the record of the first trial contains nothing to explain why B.C. and her mother were not called.

After the first trial, Boggess retained a new attorney, and a new prosecutor took over the case for the state. Prior to trial, Boggess' new counsel moved to dismiss, claiming for the first time that the prosecution had prevented B.C. and her mother from testifying by threatening to reopen the investigation of B.C.'s complaints against her father. In opposition to this claim, the new prosecuting attorney filed an affidavit in which the original prosecutor acknowledged having made a telephone call to B.C.'s mother. The prosecutor stated that she inquired whether B.C.'s mother

and B.C. intended to testify and was told that they had decided not to.

At a subsequent hearing on Boggess' motion to dismiss, Boggess' counsel represented that he had attempted to serve B.C. and her mother with a subpoena for the second trial but had learned that they were living in California. Defense counsel said that he believed that they would not testify voluntarily. Counsel made no actual showing, however, to establish that B.C. and her mother were unwilling to testify. Nor did counsel offer any evidence substantiating his claim that B.C. and her mother had failed to testify at the first trial because they had been intimidated.

The state countered Boggess' motion to dismiss by pointing out that B.C. and her mother had apparently failed to appear as witnesses at the first trial only because the attorney who then represented Boggess had elected not to call them. The state emphasized that, when the prosecutor who handled the first trial spoke by telephone with B.C.'s mother, the C.'s had evidently already decided not to testify. Thus, according to the state, the prosecutor could not have influenced their decision not to testify.

The superior court accepted the state's argument and denied Boggess' motion to dismiss:

> I find that there was no prosecutorial vindictiveness because a decision had been made by the C[.']s not to testify before [the prosecutor] made any statement to them about what they knew she would do if they testified. I mean, they're not ignorant people, and they know that when the state has—is concerned about these matters and if they provide evidence that would be material in a prosecution, the state's going to use it, is entitled to use it, and in fact has a duty to use it. I don't see how there's anything mysterious about that.

Boggess later moved for reconsideration of the order denying his motion to dismiss. For the first time, he submitted affidavits from B.C. and her mother. B.C.'s mother, in her affidavit, claimed that the prosecutor had threatened to prosecute B.C.'s father

and had made that threat before either she or B.C. had decided not to testify:

> ... I received a phone call from [the prosecutor]. [The prosecutor] stated "Mrs. C. you cannot testify in the Boggess case because your case is still under investigation and your husband may be indicted if you do." She then asked me if I still intended to go forward with my intent to testify. I told her that in light of her statement to me and to protect my family I had changed my mind.

The superior court summarily denied Boggess' motion for reconsideration.

On appeal, Boggess claims that the superior court erred in denying his motion to dismiss. He argues that the affidavits he submitted in support of his motion for reconsideration establish that B.C. and her mother were prevented from testifying by the trial prosecutor's threats of action against B.C.'s father.

■■■ A defendant's right to offer the testimony of witnesses is protected by the due process clause of the fourteenth amendment. *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). The prosecution violates this important right when it engages in conduct or makes comments aimed at discouraging defense witnesses from testifying freely. *Id.; United States v. MacCloskey*, 682 F.2d 468, 479 (4th Cir.1982); *United States v. Morrison*, 535 F.2d 223, 228 (3rd Cir.1976).

In the present case, we conclude that the record does not permit meaningful review of Boggess' witness intimidation claim. At the time the superior court ruled on Boggess' dismissal motion, the uncontroverted evidence before the court indicated that the prosecutor's only contact with B.C. and her mother occurred after they had already elected not to testify. Based on the evidence before it at the time, the court was unquestionably correct in rejecting Boggess' claim of witness intimidation.

That being the case, the remaining issue is whether the court properly denied Boggess' motion for reconsideration, which was based on the affidavits of B.C. and her mother. Assuming that the facts related

in the affidavits were true, the rationale adopted by the superior court in denying Boggess' dismissal motion would no longer be tenable. The court had found, as a matter of fact, that no intimidation had occurred because B.C. and her mother had decided not to testify before they were even contacted by the prosecutor. According to the affidavits, the prosecutor's call occurred before any decision was made, and it was the call that prompted the decision not to testify.

The affidavits filed in conjunction with Boggess' motion for reconsideration thus conflicted with the prosecutor's description of the telephone conversation; this conflict raised an issue of credibility.[2] However, conflicting affidavits provide no basis for evaluating the relative credibility of their makers. For this reason, issues of credibility cannot normally be decided based on a review of affidavits; when conflicting facts are set forth in competing affidavits, an evidentiary hearing will ordinarily be required. See Adams v. State, 704 P.2d 794, 797 (Alaska App.1985).

The Alaska Supreme Court faced a comparable issue in a somewhat different factual context in Alexander v. State, 611 P.2d 469 (Alaska 1980). Alexander was charged with statutory rape. Before trial, he moved to dismiss on grounds of pre-indictment delay. In connection with this issue, a question arose as to precisely when Alexander first received notice that the police suspected him of statutory rape. Alexander and the state's chief investigating officer gave conflicting testimony on the issue, and they gave it before different judges. The judge who ultimately denied Alexander's motion to dismiss personally heard the testimony of only one of the two witnesses; he apparently reviewed the recorded testimony of the other.

When presented on appeal with the pre-indictment delay issue, the Alaska Supreme Court declined to decide it. Instead, reasoning that "due process requires the fact finder to base its findings on testimony of witnesses personally observed if in conflict," Alexander, 611 P.2d at 474, the court concluded that the conflict in the case before it "was not resolved in a proper fact finding proceeding." Id. The court remanded Alexander's case for reconsideration, directing that a single judge personally hear all the relevant testimony. See also In re C.L.T., 597 P.2d 518, 522 n. 9 (Alaska 1979).

In the present case, the affidavits of B.C. and her mother raised a serious and substantial question as to whether the prosecutor who handled Boggess' first trial engaged in improper intimidation of prospective defense witnesses. The apparent conflict between the claim set out in Boggess' affidavits and the claims made in the affidavit of the prosecutor could properly be resolved only after an evidentiary hearing at which the personal testimony of the conflicting witnesses could be evaluated by the superior court.

Because no evidentiary hearing was held below, it is impossible for this court to determine whether Boggess' claim of prosecutorial intimidation is well founded. We conclude that a remand for an evidentiary hearing is therefore necessary. At the hearing, Boggess will bear the burden of proving, by a preponderance of the evidence, that the decision of B.C. and her mother not to testify was influenced by a threat to prosecute B.C.'s father.[3]

**2.** Boggess claims on appeal that the affidavit of B.C.'s mother conclusively established that prosecutorial intimidation occurred. According to Boggess, although the prosecution's affidavit is carefully worded to give the impression that B.C. and her mother had decided not to testify before B.C.'s mother spoke with the prosecutor, the affidavit does not literally say this. However, when read in a common sense manner, the prosecutor's affidavit appears to say that by the time the prosecutor contacted B.C.'s mother, she and B.C. had already decided not to testify. At most, the prosecutor's affidavit is ambiguous and raises a factual question for determination by the trial court. The record falls short of conclusively establishing the accuracy of the account contained in the affidavit of B.C.'s mother.

**3.** Because the record appears ambiguous on the issues, Boggess should also bear the burden of establishing that his initial trial counsel would have called B.C. and her mother as witnesses but for their unwillingness to testify voluntarily, and further, that at the second trial, B.C. and

Despite our decision that a remand is necessary on the issue of prosecutorial intimidation, we will proceed, for purposes of judicial economy, to resolve the remaining claims that Boggess has raised on appeal. *See Alexander,* 611 P.2d at 475.

## SUFFICIENCY OF THE EVIDENCE TO ESTABLISH WITNESS TAMPERING

■ Boggess next claims that the evidence at trial was insufficient to support his conviction for tampering with a witness by attempting to dissuade his wife from giving damaging testimony to the grand jury. Alaska Statute 11.56.540(a)(1) provides:

(a) A person commits the crime of tampering with a witness in the first degree if the person knowingly induces or attempts to induce a witness to

(1) testify falsely, offer misleading testimony, or unlawfully withhold testimony in an official proceeding. . . .

The sole evidence supporting Boggess' conviction for witness tampering was the testimony of Eugene Smith. Smith testified that he was at Boggess' house before the second grand jury proceeding and heard Boggess tell his wife to "plead the fifth" or "break down and cry" instead of answering questions detrimental to Boggess' case. On cross-examination, Smith testified that Sandra Boggess was mentally "slow" as the result of an accident, that she was being represented by the public defender, and that Boggess told her to plead the fifth or to cry if she could not answer questions or if it "got . . . going too fast."

Boggess argues on appeal that the evidence established only that Boggess was helping his wife prepare for her grand jury testimony and not that he was attempting to induce her to testify falsely or withhold testimony. We disagree.

In deciding whether or not the evidence is sufficient to support a conviction, we must view the evidence in the light most favorable to the state and affirm the conviction unless fair-minded jurors would nec-

essarily agree that the state failed to establish the defendant's guilt beyond a reasonable doubt. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981). Smith testified that he heard Boggess tell his wife to cry rather than offer testimony that would be detrimental to him. Viewed in the light most favorable to the state, Smith's testimony was sufficient to establish that Boggess was guilty of witness tampering by attempting to induce his wife to "unlawfully withhold testimony in an official proceeding."

## JURY INSTRUCTIONS

Boggess additionally claims that the trial court failed to correctly instruct the jury on the culpable mental state for sexual abuse of a minor. We consider the claim as a matter of plain error, since Boggess failed to object to the instructions given below. *See* Alaska R.Crim.P. 47(b); *Wilson v. State,* 670 P.2d 1149, 1152 (Alaska App. 1983). Having reviewed the instructions, we are satisfied that the jury was adequately informed of the elements of the offenses with which Boggess was charged and of the law governing his theory of defense. *See Bidwell v. State,* 656 P.2d 592, 594 (Alaska App.1983). We are further satisfied that the instructions did not shift the burden of proof to the defense with respect to its theory of defense. *See Van Meter v. State,* 743 P.2d 385, 391 (Alaska App.1987). We find no plain error.

## DENIAL OF CONTINUANCE

On February 26, 1987, a week before the scheduled date of the second trial, Boggess replaced his original counsel with a new attorney, who moved for a continuance, claiming that he had not yet received the case files from Boggess' prior counsel. Three days before the trial was scheduled to begin, Boggess' new counsel renewed his request, asking for a continuance of approximately five weeks. The trial court granted a continuance of only five days.

On appeal, Boggess contends that the trial court erred in failing to allow a longer

---

her mother continued to be unwilling to appear voluntarily as defense witnesses.

continuance. The record indicates, however, that Boggess had contemplated changing counsel as early as November of 1986. Two prior continuances had already been granted since the conclusion of his first trial. The trial date had been set since December of 1986, and Boggess had been forewarned that it would not be reset. Boggess' new counsel was presumably not altogether unfamiliar with the case, having previously represented Boggess in the CINA proceedings that arose out of R.M.'s claims of sexual abuse.

■■■■■ The decision to grant or deny a motion for continuance is within the sound discretion of the trial court. Even if that discretion is abused, reversal will be required only upon a showing of prejudice. Here, we find no abuse of discretion in denying Boggess' request for a continuance. It appears that the only reason a continuance was needed was Boggess' own lack of diligence in substituting a new attorney. See Gottschalk v. State, 602 P.2d 448, 451 (Alaska 1979). Nor has Boggess established the requisite showing of prejudice. Apart from the conclusory claim that he needed more time to complete discovery and to prepare, the only specific argument made by counsel below to support his request for a continuance was that a defense expert would be unavailable until the middle of April. After hearing an offer of proof concerning the proposed expert's testimony, however, the trial court ruled it inadmissible. Boggess does not challenge this ruling. On appeal, Boggess' claims of prejudice are either conclusory or unsupported by the record. We find no error.

## SENTENCE APPEAL

Upon Boggess' conviction, Superior Court Judge Victor D. Carlson imposed a composite term of forty-three years' imprisonment, with fifteen years suspended and twenty-eight years to serve. For the three counts of first-degree sexual abuse of a minor, Boggess received consecutive presumptive terms of eight years. He received additional consecutive terms of two years for each of the two witness tampering convictions. For the remaining convictions, Boggess received consecutive sentences totaling an additional fifteen years of suspended imprisonment.

In imposing these sentences, Judge Carlson found Boggess' conduct to be aggravated and determined that Boggess was a worst offender. Judge Carlson expressly found that Boggess posed a substantial risk of re-offending and concluded that consecutive sentences were necessary for the protection of the public. On appeal, Boggess claims that the composite sentence is excessive and that the imposition of consecutive terms was unjustified.

■■■■■ The state concedes error, and we conclude that the concession is well founded. In *State v. Andrews*, 707 P.2d 900 (Alaska App.1985), *aff'd*, 723 P.2d 85 (Alaska 1986), we adopted a benchmark range of ten to fifteen years' imprisonment for first felony offenders convicted in aggravated cases of sexual assault and abuse. First offense sentences exceeding the ten to fifteen year benchmark are appropriate only in exceptional cases, which involve multiple victims or multiple incidents of abuse committed over protracted periods of time. *Id.* at 913. *See also Howell v. State*, 758 P.2d 103, 106 (Alaska App.1988); *Mosier v. State*, 747 P.2d 548 (Alaska App.1987); *Covington v. State*, 747 P.2d 550 (Alaska App.1987); *Soper v. State*, 731 P.2d 587 (Alaska App.1987); *Hancock v. State*, 741 P.2d 1210, 1215 (Alaska App.1987).

■■■■■ As the state correctly observes, although Boggess' case involves an aggravated pattern of sexual abuse, there is nothing in the record establishing his case as exceptionally aggravated and nothing to warrant the imposition of a sentence exceeding the *Andrews* benchmark for aggravated first offenses. Accordingly, we conclude that the sentences which stem from Boggess' sexual abuse of R.M. must be remanded for imposition of a composite term within the *Andrews* range.

■■■■■ A separate question arises with respect to Boggess' convictions for tampering with a witness. The sentencing court expressly concluded that consecutive terms were justified for those offenses in light of

their separate nature and in light of the need to assure the integrity of the criminal justice system. The sentencing court's findings, in our view, establish good cause for imposition of consecutive sentences. *See Jones v. State,* 744 P.2d 410 (Alaska App.1987).

Even though the imposition of consecutive sentences for the witness tampering convictions was appropriate, we must independently consider the maximum composite sentence that can properly be imposed on remand. *See DeGross v. State,* 768 P.2d 134 (Alaska App.1989). In the present case, Judge Carlson's sentencing remarks make it clear that he considered Boggess to be a worst offender largely because of Boggess' lack of remorse and his persistent refusal to accept any responsibility for his misconduct, as exemplified in Boggess' willingness to tamper with witnesses to avoid conviction. Thus, the conclusion that Boggess deserves to be classified among the worst sexual offenders is in large measure supported by consideration of the conduct that led to his convictions for witness tampering. Because of the integral relationship between Boggess' witness tampering convictions and the conclusion that he is a worst sexual offender, we hold that it would be clearly mistaken for the sentencing court to impose consecutive terms for the witness tampering convictions that would raise Boggess' composite sentence to more than fifteen years of unsuspended incarceration.

In our view, the sentencing record would support placing Boggess at the upper limit of the *Andrews* range only if his conduct in tampering with witnesses were considered. Accordingly, on remand, if the court elects to impose consecutive sentences for the witness tampering convictions, the sentences it imposes for Boggess' sexual abuse convictions should fall toward the lower end of the *Andrews* range. We conclude that a composite sentence exceeding fifteen years of unsuspended imprisonment would be clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

This case is REMANDED for further proceedings. On remand, the superior court should initially conduct an evidentiary hearing and decide the witness intimidation issue. If Boggess fails to establish his witness intimidation claim, the court should proceed to reimpose a sentence in conformity with the views expressed herein.