**STATE of Alaska, Appellant,**

v.

**Steven P. CASE, Appellee.**

**No. A–5968.**

Court of Appeals of Alaska.

Dec. 13, 1996.

James P. Doogan, Jr., Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

James W. McGowan, Sitka, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

COATS, Judge.

A grand jury indicted Sitka Police Sergeant Steven P. Case for assault in the second degree, a class B felony, and tampering with public records in the first degree, a class C felony. AS 11.41.210(a); AS 11.56.815(a). Case filed a motion to dismiss the indictment. Superior Court Judge Michael A. Thompson granted Case's motion. The state has appealed to this court. We reverse.

On November 15, 1994, Sitka Police Department (SPD) Officers Teague Widmier and Mark Haywood arrested Melinda Wright for misdemeanor assault and criminal trespass at a local bar. Wright was very intoxicated and became verbally abusive towards both officers during booking procedures at the police station. Sergeant Steven Case, the shift supervisor, began arguing with Wright, who threatened to kill Case, his family, and his dog. She said, "If I wasn't handcuffed to this bar, I'd knock your head off." Case replied, "Well, if you weren't handcuffed to the bar, I'd knock yours off." Case threatened to have the other officers leave the room so that he and Wright could "deal with this" without witnesses. Case purposely bumped Wright twice with his shoulder, causing her to stumble.

As Officer Widmier escorted Wright from the booking area to the jail cell, she continued to yell at Case. Case, without being requested by Widmier, grabbed Wright's free arm and applied leverage to it, forcing

her head down. Case and Widmier then escorted her to a cell. Widmier and Case released Wright in her cell, at which point Wright and Case continued to argue. Wright then slapped Case, knocking off his glasses. As Widmier bent down to pick up the glasses, Case grabbed Wright in a headlock and propelled her headfirst into the concrete wall. Case and Wright then fell to the floor, with Case on top. Case grabbed Wright and banged the back of her head and shoulders against the wall again while stating "Do you want to try that again?" at least twice. Officer Haywood rushed in and had to forcibly pull Case off of Wright. Wright was taken to the hospital where a doctor examined her and concluded that there was no evidence of serious injury.

Widmier and Haywood reported the incident to Lt. Nick Ward of SPD the next morning when he arrived. Case wrote a report claiming that Wright grabbed and bent his thumb and pulled him into the wall of the jail cell. Case denied intentionally assaulting Wright. Lt. Ward conducted an internal investigation during which he interviewed Widmier, Haywood, Wright, the dispatcher on duty, and Case. Lt. Ward concluded that Case acted improperly and recommended his termination. SPD Chief John Newell agreed and forwarded the investigation to the municipal attorney. Lt. Ward also notified the Juneau District Attorney's Office, prompting the Alaska State Troopers to begin a criminal investigation. In early 1995, after the Troopers' investigation was completed, the state presented the matter to a grand jury. The grand jury indicted Case for assault in the second degree and tampering with public records in the first degree.

Case moved to suppress statements which he made to Lt. Ward during the administrative investigation. He argued they were compelled statements which were inadmissible against him under *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Case then moved to dismiss the indictment, contending that since the state had presented these statements to the grand jury, the state had used inadmissible evidence to obtain the indictment. He contend-

ed that since these statements had been obtained in violation of his constitutional rights, Judge Thompson should apply the standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which requires the court to apply a harmless beyond a reasonable doubt test.

The state did not contest the fact that Sergeant Case's statements to Lt. Ward during the administrative investigation were compelled statements which are generally not admissible. However, the state argued that Case's statements to Lt. Ward could be considered exculpatory evidence which the state was obligated to present to the grand jury. *Frink v. State*, 597 P.2d 154, 164–65 (Alaska 1979) (holding the prosecutor is required to present exculpatory evidence to the grand jury). The state pointed out that it had contacted Case's attorney before presenting the case to the grand jury and had offered to present the statements which Case made to Lt. Ward to the grand jury if Case would waive any constitutional claims. When Case did not respond, the state contended that it was in an impossible dilemma: if it presented Case's statements to Lt. Ward to the grand jury, Case would claim that the evidence was inadmissible; if the state did not present this evidence, Case would claim that the state had not presented exculpatory evidence to the grand jury.

In his decision addressing Case's pretrial motions, Judge Thompson granted Case's motion to suppress the use of statements which he made to Lt. Ward during the administrative investigation, finding that this was required under *Garrity v. New Jersey*, and noting that the state did not oppose this motion. Judge Thompson then turned to Case's motion to dismiss the indictment. He concluded that Case's statements to Lt. Ward during the administrative investigation were not legally admissible at trial and therefore the state should not have presented this evidence. to the grand jury. Alaska R.Crim.P. 6(r)(1). He found that "there is no doubt that sufficient otherwise admissible evidence was introduced to support the indictment." He concluded, however, that since the inadmissible evidence was evidence which the state had obtained in violation of Case's

constitutional rights, the court could only uphold the indictment if it found that admission of the evidence was harmless beyond a reasonable doubt, applying the *Chapman* harmless error test. Applying this test, he concluded that the indictment should be dismissed.

In *Stern v. State,* 827 P.2d 442, 445–46 (Alaska App.1992), we discussed the standard which a court should apply in determining whether the admission of improper evidence before the grand jury requires the court to dismiss the indictment:

> [W]hen a defendant proves that the grand jury heard improper evidence, the superior court must engage in a two-part analysis. The superior court first subtracts the improper evidence from the total case heard by the grand jury and determines whether the remaining evidence would be legally sufficient to support the indictment. If the remaining evidence is legally sufficient, the court then assesses the degree to which the improper evidence might have unfairly prejudiced the grand jury's consideration of the case. The question the court must ask itself is whether, even though the remaining admissible evidence is legally sufficient to support an indictment, the probative force of that admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the grand jury's decision to indict.

(Citations omitted.)

On appeal, Case argues that Judge Thompson correctly applied the *Chapman* beyond a reasonable doubt standard in determining whether to dismiss the indictment. However, Case has not cited any authority directly supporting his argument, and all of the authority of which we are aware supports the application of the standard which we set out in *Stern.* The *Chapman* test applies only where an error of constitutional dimension has occurred at trial.[1] We therefore apply the *Stern* standard to this case. Under *Stern,* our first task is to subtract the improper evidence from the total case heard by the grand jury to determine whether the remaining evidence would be legally sufficient to support the indictment. Judge Thompson's finding that "there is no doubt that sufficient otherwise admissible evidence was introduced to support the indictment" appears to be uncontested. Therefore, the only remaining question is whether "the probative force of the admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the grand jury's decision to indict." A review of the grand jury transcript convinces us that Judge Thompson erred in dismissing the indictment. As we set out in the statement of facts, the evidence against Case was primarily eyewitness testimony from his fellow police officers. It seems clear that the grand jury would make its decision to indict based upon this testimony. Not surprisingly, in his administrative interview with Lt. Ward, Case gave a version of the encounter which generally appears favorable to him. Case did admit making statements, however, in which he admitted becoming very agitated at Wright. The various eyewitnesses testified either to these statements or to other similar statements which Case made which showed that he became extremely agitated. We therefore do not believe that Case's statements to Lt. Ward could properly be considered "the decisive factor in the grand jury's decision to indict." We accordingly conclude that Judge Thompson erred in ordering the indictment against Case to be dismissed.

REVERSED.

1. For example, in *Cole v. State,* 923 P.2d 820 (Alaska App.1996), we concluded that the defendant's confession was involuntary. We reversed Cole's conviction because "we are not persuaded that admission of Cole's confession at trial was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)." However, we dismissed Cole's indictment because we found that his confession had "'an overriding influence on the [grand] jury's decision.' *See Boggess v. State,* 783 P.2d 1173, 1176 (Alaska App.1989)." *Cole,* 923 P.2d at 832 n. 20. Thus, in *Cole,* we applied the *Chapman* standard in deciding whether Cole's confession at his trial was harmless error, but ordered the indictment dismissed because we found that Cole's confession probably would have had an overriding influence on the grand jury's decision.

MANNHEIMER, Judge, concurring.

I write separately to explain in more detail why I conclude that the trial judge erred by applying a "harmless beyond a reasonable doubt" test to this grand jury error.

The principle behind any harmless-error rule (no matter how formulated) is the idea that the presence of error, by itself, is not sufficient to invalidate the result reached in a judicial proceeding. Error having been proved, the reviewing court must still determine whether the losing side was prejudiced by this error. *Love v. State,* 457 P.2d 622, 630 (Alaska 1969).

When error arises in a criminal prosecution from a violation of the defendant's rights under the United States Constitution, federal law requires reversal of the defendant's conviction unless the government shows that the error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710–11 (1967). But the states are free to apply their own harmless-error rules when an error does not violate a defendant's federal constitutional rights. *Love,* 457 P.2d at 631.

The question, then, is whether a criminal defendant has a federal constitutional right to require the exclusion of illegally obtained evidence from a grand jury proceeding. "Although the Supreme Court has not answered this precise question, there is little doubt from the manner in which the Court has dealt with very similar issues that the answer is no." Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed. 1996), § 1.6(c), Vol. 1, p. 163. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (indicating that a defendant is not entitled to challenge an indictment on the ground that the grand jury heard evidence obtained in violation of the Fourth Amendment); *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (indicating that a defendant is not entitled to challenge an indictment on the ground that the grand jury heard evidence obtained in violation of the Fifth Amendment privilege against self-incrimination); *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (indicating the same).

*See also Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (upholding an indictment based entirely on hearsay evidence against a challenge under the confrontation clause of the Fifth Amendment).

Thus, even though evidence in this case was obtained in violation of Case's privilege against self-incrimination, the introduction of that evidence at a grand jury proceeding (as distinct from a criminal trial) did not violate Case's federal constitutional rights. This being so, the courts of this state are free to use Alaska's own standard of harmless error. The standard for determining the harmfulness or harmlessness of grand jury error is described in *Stern v. State,* 827 P.2d 442, 445–46 (Alaska App.1992).

Use of the *Stern* test to assess grand jury errors makes sense even when the error is of constitutional dimension. When a court assesses whether an error was prejudicial, the essential question to be asked is whether the error might have affected the result. "[T]he pivotal question is what the error might have meant to the jury." *Love,* 457 P.2d at 630.

In judging whether a verdict might have been different, one important factor to consider is the degree of proof required by law to sustain that verdict. To return a guilty verdict in a criminal prosecution, the trier of fact (whether judge or jury) must be satisfied that the government has proved its case beyond a reasonable doubt. On the other hand, the government's burden at grand jury is substantially lower. *See Sheldon v. State,* 796 P.2d 831, 837 (Alaska App.1990) (a grand jury "should not return an indictment unless ... satisfied that the evidence presented, if unexplained or uncontradicted, establishe[s] a probability of [the defendant's] guilt").

Because of this difference in the standards of proof, the power of a given error to alter the verdict in these two types of proceedings is likewise different. An error may be prejudicial in a criminal trial (where a reasonable possibility of innocence is sufficient to acquit the defendant) but nevertheless be harmless in a grand jury context (where the same

reasonable possibility of innocence is not sufficient to defeat an indictment).

Thus, the potential prejudice of erroneously admitted evidence at grand jury should be judged under the standard described in *Stern.* This is the standard that the superior court should have applied in the present case.