STATE of Alaska, Appellant,

v.

John ALOYSIUS, Appellee.

No. A–6793.

Court of Appeals of Alaska.

Feb. 19, 1999.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Michele Power, Angstman Law Office, Bethel, for Appellee.

Before COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*O P I N I O N*

MANNHEIMER, Judge.

John Aloysius was indicted on several counts of third-degree assault. The superior court dismissed the indictment because of irregularities in the presentation of telephonic testimony to the grand jury and because the prosecutor excused the wrong two alternate grand jurors when reducing the grand jury panel to eighteen. The State concedes that these irregularities occurred, but the State argues that these errors (whether considered separately or in combination) were not a legally sufficient reason for dismissing the indictment. We agree, and we therefore reinstate the indictment.

*Irregularities in Telephonic Testimony*

In order to preserve the secrecy of grand jury proceedings, Alaska Criminal Rule 6(u)(3) establishes several rules governing the presentation of telephonic testimony:

. If a witness participates telephonically in grand jury proceedings, after the witness is sworn, the prosecuting attorney shall require the witness to:

(A) state the location from which the witness is testifying; and

(B) verify

(i) that the witness' conversation cannot be overheard;

(ii) that no extension for the telephone from which the witness is testifying is in use; and

(iii) that the witness will notify the grand jury immediately if any person can overhear the witness' testimony or if the witness becomes aware that an ex-

tension for the telephone enters use during the testimony.

In Aloysius's case, nine witnesses testified before the grand jury, and all nine did so telephonically. The prosecutor asked seven of these witnesses to verify (1) that they were alone and (2) that no one else could hear what they were saying. However, the prosecutor asked these questions before these seven witnesses were sworn, not after (as the rule specifies). In addition, the prosecutor failed to admonish these witnesses to immediately inform the grand jury if that situation changed. Finally, the prosecutor completely failed to comply with Rule 6(u)(3) when the other two witnesses testified.

Under Alaska law, irregularities in grand jury procedure will not invalidate an ensuing indictment unless the defendant shows that the irregularities affected either the testimony of a witness or the grand jury's decision to return the indictment.[1] For example, in *Hurn v. State* [2], the prosecutor stepped into the grand jury room while the grand jury was deliberating—a violation of Criminal Rule 6(k). (The prosecutor wished to tell the grand jurors that their deliberations were audible in the adjoining hallway.) This court held that a violation of Rule 6(k) will invalidate an indictment only when the defendant demonstrates that the violation prejudiced the fairness of the grand jury proceedings.[3] We further stated that, "to establish prejudice, the defendant must show that the policies behind the rule of grand jury secrecy have been undermined, or that the grand jury or a witness appearing before them has been unduly influenced by the irregularity." [4]

Before the enactment of Criminal Rule 6(u) in 1992 [5], irregularities in the presentation of telephonic testimony were analyzed

---

1. *See Soper v. State*, 731 P.2d 587, 591–92 (Alaska App.1987) (stating the general rule); *see also Frink v. State*, 597 P.2d 154, 161 (Alaska 1979) (noting that even when inadmissible evidence is presented to the grand jury, the ensuing indictment should not be dismissed unless the inadmissible evidence was probably significant to the grand jury's decision); *Boggess v. State*, 783 P.2d 1173, 1176 (Alaska App.1989) (holding that an indictment will stand despite a violation of Criminal Rule 6 unless the violation contributed to the

return of the indictment or otherwise gave rise to unfair prejudice).

2. 872 P.2d 189 (Alaska App.1994).

3. *See id.* at 193.

4. *Id.*

5. *See* Supreme Court Order No. 1115.

under Rule 6(k). *See Boggess v. State.*[6] In *Boggess,* the prosecutor failed to inquire whether a witness testifying by telephone was in fact alone when she testified. This court upheld the indictment because there was no indication that this omission had affected the witness's testimony or the grand jury's deliberations.[7]

■ Although Rule 6(u) now governs telephonic grand jury testimony, we will continue to apply the same analysis when we assess the legal effect of procedural irregularities in the taking of telephonic testimony. An irregularity in the taking of telephonic testimony at grand jury will not invalidate an ensuing indictment unless the defendant shows that the irregularity affected the testimony heard by the grand jury or affected the grand jury's deliberations.

■ As explained above, the prosecutor made incomplete inquiries at the beginning of seven witnesses' testimony: the prosecutor asked these witnesses to affirm that they were alone and that no one else could hear what they were saying, but the prosecutor failed to instruct these witnesses to immediately inform the grand jury if that situation changed. This was a lapse from the rule, but there is no indication in the record that this lapse affected the witnesses' testimony. In fact, the record indicates that the first witness took affirmative action—moving into an office at the Holy Cross Mercantile—so that they would be in a room where no one else could hear their testimony. The record also reflects that each witness had to "go get" the next witness when they completed their testimony.

■ Thus, the record fails to suggest that the prosecutor's lapse had any effect on grand jury secrecy or on the testimony of the various witnesses. Aloysius suggests that someone else might have heard one or more of the witnesses testify, either by walking in during the testimony or by picking up a remote telephone extension, but there is no evidence to support such speculation. Aloysius also suggests that, because the prosecutor asked the witnesses about their physical

privacy before the witnesses were actually placed under oath, the witnesses may have felt free to give disingenuous answers to the prosecutor's inquiries. Again, there is nothing in the record to support such speculation.

The violation of Rule 6(u) was more egregious with respect to the remaining two witnesses, for the prosecutor failed to ask these witnesses any of the preliminary questions required by the rule. Nevertheless, the record fails to demonstrate any reason to believe that these violations of Rule 6(u) prejudiced the grand jury proceedings.

■ Finally, Aloysius suggests that, because all of the witnesses were gathered at the Holy Cross Mercantile building to give their testimony, witnesses who had already given their testimony may have spoken to other witnesses who were still waiting to testify. This claim has nothing to do with the fact that the witnesses were testifying by telephone. The same potential for inter-witness discussion exists whenever two or more grand jury witnesses gather together outside a grand jury room, waiting to give their testimony in person.

We note, moreover, that grand jury witnesses are apparently free to reveal and discuss the grand jury testimony they have given. Criminal Rule 6(*l*)(1) imposes a duty of secrecy upon judges, grand jurors, attorneys, interpreters, court clerks, and stenographers and transcribers. But the rule does not impose a duty of secrecy upon witnesses. In fact, subsection (3) of Rule 6(*l*) expressly declares that "[n]o obligation of secrecy may be imposed upon any person except in accordance with this rule".

For these reasons, we conclude that the irregularities in taking the witnesses' telephonic testimony did not constitute a ground for dismissing the indictment.

*Excusal of the Two Alternate Grand Jurors*

■ Another grand jury irregularity occurred when the grand jurors were impaneled, before any testimony was received.

---

**6.** 783 P.2d 1173, 1177 (Alaska App.1989).

**7.** *See id.* at 1177–78.

Criminal Rule 6(d) states that a grand jury must have at least twelve members and no more than eighteen. When the prosecutor began presenting Aloysius's case, twenty grand jurors (including several alternates) were present. This meant that two of the alternates had to be excused in order to reduce the panel to eighteen. The prosecutor told the grand jurors:

> PROSECUTOR: Okay, I'm going to excuse [two of] the [alternate] grand jurors now. I guess we'll just—well, rather than go from the top, we should probably do something a little fairer and get the middle. [To the clerk] Okay, what are the ...
>
> CLERK: Number 6 and Number 5 are in the middle.
>
> PROSECUTOR: Okay, we'll do those two. [Alternates] 5 and 6 can go.

This procedure was flawed. Criminal Rule 6(f) declares that when alternate grand jurors are placed on the grand jury panel, they are to be impaneled "in the order in which they were designated". Thus, Rule 6(f) prohibited both the prosecutor's first plan (to excuse the two alternates at the top of the list) and the prosecutor's ultimate action (excusing two alternates from the middle of the list). The rule required the prosecutor to excuse the two alternates who were designated last—the ones who presumably appeared at the bottom of the list.

Nevertheless, the record is fairly clear that the prosecutor was acting from ignorance of Rule 6(f) and was not attempting to manipulate the selection of alternates in order to obtain a favorable panel. As can be inferred from the excerpt of the proceedings quoted above, the prosecutor apparently did not know the identities of alternate grand jurors 5 and 6 when he announced that these two alternates were excused. After reviewing the record, the superior court concluded that the prosecutor had "acted in good faith". This finding is not clearly erroneous.[8]

In cases involving challenges to the composition of a grand jury, this court has ruled that a defendant must demonstrate prejudice from the irregularity before an indictment will be dismissed.[9] In *Harris v. State*[10], several grand jurors were impaneled even though they resided beyond a fifty-mile radius of the grand jury site—a fact that should have disqualified them from the grand jury venire.[11] We held that this error did not require dismissal of the indictment because "[t]here was no showing [of] any systematic exclusion of any class or group" from the grand jury venire, nor any showing that the irregular selection "prejudiced [the defendant] in any conceivable way."[12]

In Aloysius's case, the superior court found that the prosecutor acted in good faith, and there is no indication that the grand jury's consideration of the charges against Aloysius was affected by the irregular method of impaneling the grand jury alternates. We therefore conclude that this irregularity did not constitute a ground for dismissing the indictment.

We reach this conclusion for a second reason as well. This court has recognized that unqualified grand jurors may nevertheless be *de facto* grand jurors whose acts remain legally valid. In *State v. Roark*[13], some alternate grand jurors served on the grand jury panel even though, through administrative error, these alternates had never taken the grand jury oath required by Criminal Rule 6(e)(1). This court held that the unsworn alternates were nevertheless *de facto* members of the grand jury, and thus the indict-

---

**8.** *See Bobby v. State*, 950 P.2d 135, 138 (Alaska App.1997) (the superior court's factual determinations will stand unless the defendant shows them to be clearly erroneous).

**9.** *See Hampton v. State*, 569 P.2d 138, 148–49 (Alaska 1977) (holding that the defendant's right to an impartial jury was not impaired when there was no common thread or similarity among the group of excluded jurors); *Peterson v. State*, 562 P.2d 1350, 1366 (Alaska 1977) (stating that "[s]o long as no group of citizens has been systematically excluded from the grand jury selection process, a conviction on an indictment which is otherwise sufficient will be upheld").

**10.** 678 P.2d 397 (Alaska App.1984), *rev'd on other grounds, Stephan v. State*, 705 P.2d 410 (Alaska 1985).

**11.** *See* Criminal Rule 6(c)(1).

**12.** *Harris*, 678 P.2d at 399.

**13.** 705 P.2d 1274 (Alaska App.1985).

ments returned by that grand jury panel remained valid.[14]

■■ In Aloysius's case, all of the alternate grand jurors were apparently qualified to serve and had taken the required oath. The sole irregularity lay in the fact that the prosecutor, acting in good faith, excused the wrong two alternates. Because of this mistake, the two alternates from the bottom of the list—that is, the two alternates who should have been excused pursuant to Rule 6(f)—were allowed to stay and serve on the grand jury panel. Under these circumstances, these two alternates should be deemed *de facto* grand jurors; their participation on the grand jury panel does not invalidate the acts of that panel.

14. *See id.* at 1279.

*Conclusion*

Neither of the two irregularities in the grand jury process prejudiced the fairness of the proceedings. Because there was no prejudice to Aloysius, the superior court should not have dismissed the indictment.

The decision of the superior court is REVERSED, the indictment is reinstated, and this case is remanded to the superior court for further proceedings on that indictment.