**Daryle JAMES, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–10679.**

Supreme Court of Alaska.

Jan. 30, 2004.

Dan S. Bair, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Daryle D. James was convicted of second degree sexual abuse of a minor and second-degree sexual assault. After his conviction, Danielle M.,[1] the key witness and only eyewitness to the incident, recanted her testimony that she saw James having sex with the minor, Elaine F. The superior court denied James's motion for a new trial predicated on Danielle's recantation, basing this denial on its finding that Danielle's recantation was not credible. James petitions for hearing. We reverse the denial of James's motion for a new trial because the superior court failed to consider whether the recantation would produce an acquittal at a new trial. We remand this matter to the superior court to determine whether Danielle's recantation, when considered with all the other evidence, would probably produce an acquittal.

## II. FACTS AND PROCEEDINGS

### A. Facts[2]

Thirteen-year-old Elaine attended a party on the night of June 11 and the early morning hours of June 12, 1994. She became intoxicated at the party and eventually passed out. She is unable to remember what

---

1. Pseudonyms are used for the minors involved in this case to protect their privacy.

2. The facts in this opinion are taken from the opinion of the court of appeals in *James v. State,* 49 P.3d 1120 (Alaska App.2002).

happened in the early morning hours of June 12.

The key witness in this case is Danielle, a girl who was fourteen years old at the time of the party. James is her great-uncle. It is uncontested that at some point during the party, Danielle witnessed Elaine having sex with Michael C., another minor. Danielle testified at James's trial that she dressed Elaine after this incident and covered her with a sleeping bag. Later, Danielle checked on Elaine and again found her naked. James entered the room while Danielle was present and commented on Elaine's vaginal area. Danielle dressed Elaine again and left. Danielle later witnessed someone other than Michael or James having sex with Elaine.

Later that morning, James complained that Elaine was in his room, and she was eventually dragged to another bedroom. Danielle testified that she later opened the door to this room and saw James having sex with an unconscious Elaine. She was the only eyewitness to James's alleged sexual assault of Elaine.

Danielle's testimony was corroborated by Bert Colegrove, an adult who shortly after the incident told the police that James had dragged a naked girl into a room, closed the door, and returned downstairs a short time later. Colegrove recanted his statements at the grand jury proceedings and said that he thought James was just trying to get Elaine to a "safe place."

Colegrove's son also saw James and Michael drag Elaine to a room and shut the door. When he returned to the room, he saw fresh semen on the mattress.

On June 16, 1994, four days after the party, Danielle was contacted by Sergeant Jeffrey Hall of the Alaska State Troopers and she told him that she saw James having sex with Elaine. Hall testified that Danielle was reluctant to talk about James because he was a family member, but that he did not remember pressuring her to incriminate James. The troopers were unable to find Danielle to serve her with a subpoena to appear at the subsequent grand jury proceedings, and Danielle moved to Anchorage shortly after James was indicted in July 1994. The state was unable to locate Danielle when James's trial was supposed to start in October 1994, and after several continuances the court granted the state's request to issue a material witness warrant for Danielle. Danielle was arrested shortly after the warrant was issued and was held at McLaughlin and Johnson Youth Centers prior to James's trial. At the jury trial in February 1995 she testified, in conformance with her statement to Sergeant Hall, that she saw James having sex with Elaine.

## B. Proceedings

James was convicted of second degree sexual abuse of a minor under AS 11.41.436(a)(1) and second degree sexual assault under AS 11.41.420(a)(3)(B). On direct appeal, the court of appeals affirmed James's convictions and sentence.[3]

James filed an application for post-conviction relief under Alaska Criminal Rule 35.1[4] in September 1997, which he supplemented in April 1998 with Danielle's recantation of her trial testimony. In an affidavit, Danielle claimed that she had lied when she testified that she saw James having sex with Elaine.

Superior Court Judge Michael A. Thompson held an evidentiary hearing in June 1998 to determine whether James should be granted a new trial based upon Danielle's recantation.[5] At the evidentiary hearing

3. *Daryle D. James v. State of Alaska*, Mem. Op. & J. No. 3734, 1997 WL 796507 (Alaska App., December 24, 1997).

4. Alaska R.Crim. P. 35.1 provides in relevant part that:

(a) [a] person who has been convicted of or sentenced for a crime may institute a proceeding for post conviction relief under AS 12.72.010—12.72.040 if the person claims:
. . . .

(4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice. . . .

5. James's motion for a new trial was based on several other claims as well. The superior court's denial of these claims was vacated by the court of appeals and remanded for further proceedings based on those claims. Those claims are not the subject of this appeal. *James v. State*, 49 P.3d 1120, 1124–26 (Alaska App.2002).

Danielle testified, as she stated in her affidavit, that she did not see James have sex with Elaine. Danielle claimed that she was pressured and threatened into testifying against James by the state troopers and the district attorney while she was at Johnson Youth Center in Juneau. The superior court found that Danielle had been pressured by her "family dynamics" to change her story and that Danielle had also been pressured by the guards and inmates at the youth center to maintain her story. The superior court ultimately denied James's motion for a new trial because it found that Danielle's recantation was not credible. James appealed and the court of appeals affirmed the superior court's decision that Danielle's recantation was insufficient to require a new trial.[6] James filed a petition for hearing which we granted.

### III. STANDARD OF REVIEW

 "Whether the trial court applied the correct legal rule ... is a question of law that we review de novo using our independent judgment."[7] When reviewing questions of law we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[8]

### IV. DISCUSSION

**The Superior Court Must Determine Whether Danielle's Recantation Would Probably Lead to James's Acquittal at a New Trial.**

James claims that the superior court erred by basing its dismissal of his motion for a new trial solely on its finding that Danielle's recantation lacked credibility. In *Salinas v. State*[9] we articulated five requirements which a defendant must meet before the court may grant a new trial based upon new evidence:

(1) It must appear from the motion that the evidence relied on is, in fact, newly

discovered, i.e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.[10]

The parties disagree about whether the superior court undertook the required analysis of whether Danielle's recantation would probably produce an acquittal at a new trial.

James argues that instead of focusing exclusively on the credibility of Danielle's recantation, the superior court should have "address[ed] whether, after considering [Danielle]'s evidentiary testimony with all the other evidence to be presented at a new trial, a reasonable jury could probably conclude that there existed a reasonable doubt." The state responds that the superior court implicitly considered the effect of Danielle's recantation on a new trial because its "findings about the lack of credibility of the recantation strongly suggest that [the court] implicitly concluded the recantation ... probably would not have resulted in an acquittal." We agree with James.

 Rather than implying that it was considering the effect Danielle's recantation would have on a new trial, the superior court took pains to indicate the limited scope of its findings by the way it framed the question presented by James's motion. The superior court explicitly limited its analysis to Danielle's credibility in recanting, rather than the impact of the recantation on a new trial:

the question is, do I believe the witness now or did I believe her then? ... [If the answer is] a tie, I think the defendant loses in cases of this sort because I think he has the burden of satisfying me that it's more

---

**6.** *Id.* at 1122–23.

**7.** *Martin v. Martin,* 52 P.3d 724, 726 (Alaska 2002).

**8.** *Alderman v. Iditarod Props., Inc.,* 32 P.3d 373, 380 (Alaska 2001).

**9.** 373 P.2d 512 (Alaska 1962).

**10.** *Id.* at 514 (quoting *Pitts v. United States,* 263 F.2d 808, 810 (9th Cir.1959)). *See also Hensel v. State,* 604 P.2d 222, 231 (Alaska 1979) (providing that "the defendant has the burden of proving by a preponderance of the evidence that newly discovered evidence would be likely to change the result of the trial[,] that is, that the evidence would be sufficient to create a reasonable doubt as to his guilt").

likely than not at least, and probably clear and convincing ... should be the test, that the witness lied then and is truthful now. The superior court confirmed that it was denying James's motion for a new trial based upon its assessment of Danielle's credibility when it stated that

she hasn't convinced me that her testimony at trial, which I found believable, is now unbelievable. I believed it then. I still believe it now. I don't believe what I heard the other day. I think she has nine different reasons to say what she said the other day. And I don't find any of them very compelling. They're compelling to her, but they're not compelling to me when I have to decide if it's true or false.

In addition, no part of the superior court's order can be fairly interpreted to constitute an implicit consideration of whether James would probably be convicted at a new trial at which the evidence would include Danielle's original trial testimony, her recantation, and other evidence bearing on the credibility of the recantation. The state's argument—that the superior court made an implicit finding that Danielle's recantation would not produce an acquittal at a new trial—is based primarily on the premise that "a credibility assessment encompasses an evaluation of the probable impact of the testimony." While the court of appeals has correctly stated that a court must assess the credibility of testimony in order to determine its impact, this certainly does not mean that all assessments of credibility encompass an assessment of the testimony's overall impact on a new trial.[11] Although the credibility of a recantation is certainly relevant to determining the probable result of a new trial, it is entirely possible for a judge to find that, even though he or she does not believe a witness's recantation, it is probable that a defendant petitioning for post-conviction relief would be acquitted at a new trial if the witness testified in accordance with his or her recantation. There-

fore, it is not enough under *Salinas* for the superior court to examine only the credibility of a witness's testimony.

The state argues that we should infer from the superior court's assessment of Danielle's credibility that the court implicitly determined that a new trial would not result in acquittal.[12] We cannot draw that inference. First, the superior court's order focused almost exclusively on the court's reasons for doubting the credibility of Danielle's recantation without even mentioning the effect of the recantation on a new trial. Furthermore, the superior court's only reference to the effect of Danielle's testimony suggested that, had Danielle recanted at the first trial (rather than after the trial), it would indeed have led to a different outcome. Judge Thompson stated that "in my opinion under no circumstances would Mr. James [have] been convicted had the witness testified at trial as she did here. He would have been acquitted. I think it's unquestionable." This sole reference to the effect of Danielle's testimony certainly cannot serve as a substitute for a finding that the effect of a recantation at a second trial would "probably [not] produce an acquittal." Because the superior court neither explicitly nor implicitly stated the likely effect of the recantation evidence on a jury at a new trial, we must remand for the superior court to make that finding.

Although we hold that a remand for express findings is needed, our decision suggests no view on the ultimate issue to be decided by the superior court—whether the newly discovered evidence would probably produce an acquittal.[13] We emphasize again that the probable effect of Danielle's recantation must be realistically evaluated in light of the totality of the evidence to be presented in the event of a retrial, including Danielle's original testimony, which the jury would be

11. *Shapiro v. State,* 793 P.2d 535, 537 (Alaska App.1990).

12. The state also argues that the superior court implicitly concluded that Danielle's recantation was merely impeaching, which would cause James's motion to fail the third requirement of the *Salinas* test. We do not read the superior

court's opinion to imply that Danielle's recantation is merely impeaching. In the context of this case, it has potentially greater impact than mere impeachment evidence. *See* n. 14 *infra.*

13. *Salinas v. State,* 373 P.2d 512 (Alaska 1962).

entitled to consider as substantive proof,[14] and all other admissible evidence impeaching her recantation.

## V. CONCLUSION

We REMAND this case to the superior court to make findings as to whether Danielle's recantation at a new trial, when considered with all the other evidence, would probably result in James's acquittal. If it would, the court should order a new trial. If it would not, the conviction should stand.

---

**14.** We have long recognized that the use of prior inconsistent statements is not limited to their impeachment value and that such statements may also be considered as substantive evidence. *See Beavers v. State,* 492 P.2d 88, 94 (Alaska 1971).