We AFFIRM the superior court's order on remand terminating A.M.'s parental rights.

John K. DAVIS, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. A–6318.

Court of Appeals of Alaska.

Sept. 19, 1997.

Michael B. Logue, Gorton & Associates, Anchorage, for Appellant.

James L. Walker, Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before COATS, C.J., and
MANNHEIMER, J., and RABINOWITZ,

Senior Supreme Court Justice.*

## *OPINION*

MANNHEIMER, Judge.

The Municipality of Anchorage undertook an *in rem* forfeiture proceeding against a vehicle owned by John K. Davis. This forfeiture action was prosecuted under former Anchorage Municipal Code (AMC) 9.28.026, an ordinance which declared that any vehicle operated by an intoxicated driver, or any vehicle operated by a driver who refused to submit to a breath test, was subject to forfeiture as a "public nuisance". Based on proof that Davis had driven while intoxicated and had refused to submit to a breath test, the Municipality obtained forfeiture of Davis's vehicle. The Municipality also pursued criminal charges against Davis for these same two offenses.

In this appeal, Davis contends that once the Municipality secured forfeiture of his vehicle in the civil proceeding, the double jeopardy clauses of the federal and the Alaska constitutions prohibited the Municipality from pursuing the criminal charges against him. For the reasons explained in this opinion, we hold that the Municipality was entitled to pursue both the *in rem* forfeiture action and the criminal charges.[1]

### Facts of the case

Davis was arrested in Anchorage on February 17, 1995, for driving while intoxicated and refusing to submit to a breath test. His vehicle, a 1982 Ford, was seized at the time of his arrest. While Davis awaited trial on the two criminal charges, the Municipality pursued an *in rem* forfeiture action against the vehicle, and on May 12, 1995, Davis's vehicle was declared forfeit to the Municipality.

Davis asked the district court to dismiss the still-pending criminal charges. He argued that the forfeiture of his vehicle amounted to a "punishment" for his acts of driving while intoxicated and refusing the breath test. Davis further contended that, because he had been punished once for these acts (by the forfeiture of his vehicle), the constitutional guarantees against double jeopardy prohibited the government from punishing him again for the same acts (by imprisonment or fine in the criminal case). *See* the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Alaska Constitution.

The district court rejected Davis's arguments and refused to dismiss the criminal charge. Davis then pleaded no contest to driving while intoxicated, preserving his double jeopardy argument for appeal. *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

*The forfeitures imposed under former AMC 9.28.026 were in rem forfeitures*

In his brief to this court, Davis renews his argument that the forfeiture of his vehicle was a "punishment" for double jeopardy purposes. Under the United States Supreme Court's decision in *United States v. Ursery,* 518 U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), it is clear that forfeiture of a person's property in an *in rem* civil forfeiture proceeding does not constitute "punishment" for purposes of the federal double jeopardy clause. Davis attempts to avoid this result by arguing that vehicle forfeiture proceedings under former AMC 9.28.026 were not really *in rem* proceedings, but were instead *in personam* forfeitures, a type of forfeiture generally recognized as "punishment". *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2147 (majority opinion) and —— U.S. at ——–——, 116 S.Ct. at 2150–51 (concurring opinion of Justice Kennedy).

The law distinguishes between *in personam* forfeitures, which are inflicted as punishment for a crime, and *in rem* forfeitures, which can be inflicted on property owners who are themselves innocent of crime, if the government proves that the property is contraband or is connected to the commission of

---

* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

1. Since the time of this litigation, the Municipality of Anchorage has amended AMC 9.28.026. The current version of the ordinance contains several changes that are arguably material to a double jeopardy analysis. We express no opinion concerning the current version of AMC 9.28.026.

a criminal act. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974); *The Palmyra,* 12 Wheat. 1, 14–15, 6 L.Ed. 531 (1827).

For instance, this court recently decided a case in which a defendant was subjected to an *in personam* forfeiture of his vehicle. *See Hillman v. Anchorage,* 941 P.2d 211 (Alaska App.1997). In *Hillman,* the defendant's vehicle was forfeited, not in a separate civil action, but at his sentencing for driving while intoxicated. The forfeiture was imposed as part of the defendant's sentence pursuant to former AMC 9.28.020(C) (the statutory provision defining the penalties for driving while intoxicated), and the legal basis for the forfeiture was that the defendant had been found guilty of a crime.

■ Such *in personam* forfeitures, imposed as part of a person's penalty for violating a criminal statute, must be distinguished from *in rem* forfeitures, which do not depend upon proof that the property owner is guilty of a crime, but which are based on proof that the property is contraband or is connected to or derived from some dangerous or unlawful activity. This distinction was explained in some detail by Justice Kennedy in his concurring opinion in *Ursery:*

> The key distinction is that the instrumentality-forfeiture statutes are not directed at those who carry out the crimes, but at owners who are culpable for the criminal misuse of the property. *See Austin [v. United States,* 509 U.S. 602,] 619, 113 S.Ct. [2801,] 2810–2811, 125 L.Ed.2d 488 [ (1993) ] (statutory "exemptions serve to focus the provisions on the culpability of the owner"). The theory [of *in rem* forfeiture] is that the property, whether or not illegal or dangerous in nature, is hazardous in the hands of this owner because he either uses it to commit crimes, or allows others to do so. The owner can be held accountable for the misuse of the property. *Cf. One 1958 Plymouth Sedan [v. Pennsylvania,* 380 U.S. 693,] 699, 85 S.Ct. [1246,] 1250[, 14 L.Ed.2d 170 (1965) ] ("There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was

> put that subjects [the owner] to its possible loss.") … Since the punishment befalls any propertyholder who cannot claim statutory [exemption], whether or not he committed any criminal acts, [the forfeiture] is not a punishment for a person's criminal wrongdoing.

> Forfeiture, then, punishes an owner by taking property involved in a crime[.] [I]t may happen that the owner is also the wrongdoer charged with a criminal offense. But the forfeiture is not a second *in personam* punishment for the offense[.]

*Ursery,* —— U.S. at ——, 116 S.Ct. at 2150.

In *Ursery,* the Supreme Court reaffirmed that the government may pursue "parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events". The Court noted that, "in a long line of cases", it had "considered the application of the Double Jeopardy Clause to civil forfeitures" and had "consistently conclud[ed] that the Clause does not apply to such actions because they do not impose punishment." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2140.

■ The question then, for double jeopardy purposes, is to distinguish civil *in rem* forfeitures from forfeitures that are "intended as punishment, so that the proceeding is essentially criminal in character". *Ursery,* —— U.S. at ——, 116 S.Ct. at 2141, quoting *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984). To answer this question, the *Ursery* Court reviewed its past decisions in this area—specifically, *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931), *One Lot [of] Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam), and *United States v. One Assortment of 89 Firearms, supra*—and then reaffirmed the two-part analysis it had used in those cases:

> First, [a court must] ask whether [the legislature] intended proceedings under [the forfeiture statute] to be criminal or civil. Second, [a court must] consider whether the [forfeiture] proceedings are so punitive in fact as to "[demonstrate] that

[they] may not legitimately be viewed as civil in nature," despite [the legislature's] intent. *89 Firearms,* 465 U.S., at 366, 104 S.Ct., at 1107.

*Ursery,* —— U.S. at ——, 116 S.Ct. at 2147. Using this analysis as a guide, we conclude that the vehicle forfeitures imposed under former AMC 9.28.026 were *in rem* forfeitures, and that forfeiture proceedings under that ordinance were civil, not criminal.

Under subsection C(3) of the ordinance, a vehicle allegedly used in connection with either of the two specified offenses (driving while intoxicated or breath test refusal) could be seized and held for impoundment or forfeiture proceedings even if no criminal charges were ever filed against the driver. In fact, seizure of the vehicle apparently did not depend on whether the court could obtain *in personam* jurisdiction over the driver. Subsection C(3) provided that any court "having jurisdiction *over the motor vehicle* " could issue an order for seizure of the vehicle if the government demonstrated probable cause to believe that the vehicle was forfeitable under AMC 9.28.026. The same subsection declared that, even in the absence of an arrest, a police officer who had probable cause to believe that a vehicle was forfeitable could temporarily seize the vehicle and hold it for up to 2 days (so that a court order could be obtained to authorize a longer seizure). Moreover, under subsection A(6), even when criminal charges were filed against the driver, the court presiding over the forfeiture action (and not the court presiding over the criminal action) remained in control of the vehicle: "Any requests for release of a vehicle during the pendency of [the] *in rem* action" had to be "brought in the forum of the *in rem* action".

Forfeiture under former AMC 9.28.026 was not premised on whether the driver of the vehicle had been convicted of a crime. Rather, subsection A(11) declared that it was "not a defense to an *in rem* proceeding brought under [AMC 9.28.026]" that the person in possession of the vehicle was acquitted or was convicted of a lesser offense. And, under subsection A(3), it was likewise no defense that a criminal proceeding against that person remained unresolved. Once the

Municipality established by a preponderance of the evidence that the vehicle had been used in connection with one of the two specified offenses, subsection A(7) allowed only one defense to forfeiture—that the vehicle owner "[was not] in possession of the vehicle and [was not] responsible for ... the act which resulted in the impound[ment] or forfeiture", and that the vehicle owner "did not know or have reasonable cause to believe" that the other person would operate the vehicle in violation of the law.

This analysis of former AMC 9.28.026 demonstrates that its forfeiture provisions were squarely aimed at "owners who [were] culpable for the criminal misuse of [their vehicle]", and that the forfeiture imposed by this ordinance was based on proof that the vehicle was "hazardous in the hands of this owner because either he use[d] it to commit crimes, or allow[ed] others to do so". *Ursery,* —— U.S. at ——, 116 S.Ct. at 2150. The Anchorage Municipal Assembly plainly intended the forfeiture provisions to be civil, and our analysis of those provisions demonstrates that those provisions are not "so punitive in fact" as to belie that civil categorization. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2147.

■ We therefore hold that forfeitures imposed under former AMC 9.28.026 were civil *in rem* forfeitures. It follows that vehicle forfeitures under former AMC 9.28.026 were not "punishments" for purposes of the federal double jeopardy clause. *Ursery, supra.* Under federal constitutional law, the forfeiture of Davis's vehicle did not bar the Municipality of Anchorage from prosecuting Davis for the crimes of driving while intoxicated and refusing a breath test.

*Davis's argument under the Alaska Constitution*

Davis argues that, even if the forfeiture of his vehicle did not constitute a "punishment" under federal double jeopardy law, we should interpret the Alaska double jeopardy clause differently. Davis cites *Whitton v. State,* 479 P.2d 302, 310 (Alaska 1970), in which the Alaska Supreme Court refused to follow federal precedent and instead adopted a different test for deciding when a defendant's vio-

lation of two criminal statutes constitutes the "same offense" for double jeopardy purposes.

However, as we noted both in *State v. Zerkel*, 900 P.2d 744 (Alaska App.1995), and in *Aaron v. Ketchikan*, 927 P.2d 335 (Alaska App.1996), the fact that a clause of the Alaska Constitution has, on occasion, been interpreted differently from the corresponding provision of the federal Constitution does not mean that we are at liberty to ignore federal precedent at will. When a party asserts that a provision of the Alaska Constitution should be construed differently from its close federal counterpart, that party bears the burden of demonstrating "something in the text, context, or history of the Alaska Constitution that justifies this divergent interpretation". *Zerkel*, 900 P.2d at 758 n. 8, citing *Abood v. League of Women Voters*, 743 P.2d 333, 340–43 (Alaska 1987); *Aaron*, 927 P.2d at 336.

Davis does not satisfy the requirement established in *Abood*, *Zerkel*, and *Aaron*. He argues that the Alaska Supreme Court has not followed federal law in defining "same offense" (viz., the *Whitton* decision), and he argues that the concept of double jeopardy should not be "static". But even acknowledging this to be true, Davis does not explain why civil forfeiture of a vehicle used by an intoxicated driver should be considered "punishment" under the Alaska Constitution. Under AMC 9.28.026, the Municipality of Anchorage was authorized to institute a civil action to obtain forfeiture of movable property that was used as the instrumentality of a criminal offense. Such forfeitures have a long tradition in Anglo–American law, and they traditionally have been viewed as non-criminal. The United States Supreme Court's decision in *Ursery* affirms this traditional view. Davis asks us to reject the analysis in *Ursery*, but he provides hardly any critique of the legal reasoning underlying that decision.

We recognize that, in recent times, both the Congress and various state legislatures have greatly increased the scope and severity of *in rem* forfeitures in an attempt to deter not only criminals but also non-criminals who countenance the use of their property by criminals. See Justice Stevens's dissent in *Ursery*, —— U.S. at ——, 116 S.Ct. at 2153. There are constitutional limits to such forfeitures; *in rem* forfeitures are governed by the Eighth Amendment's prohibition on excessive fines. *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Moreover, it is possible that the Alaska Constitution may place additional limitations on forfeitures of non-traditional scope or severity. However, Davis's case does not raise these issues.

The judgement of the district court is AFFIRMED.