**Dennis C. SNYDER, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, DIVISION OF MOTOR VEHICLES, Appellee.**

**No. S–9565.**

Supreme Court of Alaska.

March 15, 2002.

---

**23.** AS 25.24.160(a)(4)(B)-(E).

**24.** *See Siggelkow v. State,* 731 P.2d 57, 61–62 (Alaska 1987).

**158**

Robert John, Law Office of Robert John, Fairbanks, for Appellant.

Marilyn J. Kamm, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

After an administrative hearing, the Division of Motor Vehicles revoked Dennis Snyder's driver's license on the ground that Snyder had driven with a blood alcohol level exceeding the legal limit. Snyder appealed to the superior court, which remanded for reconsideration because the division's hearing officer had misapplied the applicable burden of proof. On remand, a different hearing officer reviewed the record and reaffirmed the original ruling; but the new officer reached this decision by finding that Snyder had not been truthful in certain portions of his testimony that the original hearing officer had found to be truthful. The superior court affirmed the second ruling. We reverse, concluding that due process precluded the new hearing officer from revising the original officer's assessment of testimonial credibility without giving Snyder advance notice of the case's reassignment and an opportunity to re-present live testimony.

## II. FACTS AND PROCEEDINGS

In March 1996 Alaska State Trooper Jacob D. Baergen responded to a report of a car blocking traffic at an intersection near North Pole. Upon arrival, Trooper Baergen saw Dennis Snyder standing in the intersection; his car was stuck in the snowbank at the side of the roadway. Snyder said that he had driven the car into the snowbank to avoid hitting another car, but his description of the incident did not comport with the car's resting position. Trooper Baergen noted that Snyder had a strong odor of alcohol about him, his eyes were watery and bloodshot, his speech was slurred, and his balance unsteady. The accident appeared to have happened shortly before the trooper's arrival, and Snyder said nothing to indicate that he had left the scene afterwards.

Based on these observations, Trooper Baergen asked Snyder to perform "a standard set of field sobriety tests, all of which he failed." The trooper then performed a preliminary breath test and arrested Snyder for DWI after obtaining a result of .155. When a subsequent Intoximeter 3000 test yielded a result of .147, Snyder was charged with DWI and issued a notice of administrative license revocation.

Snyder contested the administrative revocation. At a hearing before DMV Hearing Officer Joy Gifford, Snyder denied consuming any alcohol before the accident. He testified that the accident actually occurred more than two hours before Trooper Baergen's arrival. According to Snyder, the accident scene was about a mile or a mile and a half from his house. Snyder did not have a telephone but he used the phone of a next-door neighbor, Michael Scott. Snyder thus decided to walk to Scott's house from the accident scene in order to summon help. He claimed that, after arriving at Scott's and calling a friend in Fairbanks for help, he accepted Scott's invitation to have some beer; over the next hour or hour and a half, he visited with Scott and drank three to five beers. Snyder testified that he then walked back to the accident scene, arriving just before Trooper Baergen. Scott also testified at the revocation hearing and essentially confirmed Snyder's version of events.

At the conclusion of the evidentiary hearing, Snyder's counsel argued that Snyder's

blood alcohol level at the time of the accident did not exceed the legal limit because the tests that Trooper Baergen conducted reflected alcohol consumed after the accident. In addressing this argument, Hearing Officer Gifford expressly found that the testimony concerning Snyder's post-accident consumption was credible, noting that the only conflict appeared to be when and how much post-accident drinking actually occurred.[1] Referring to "common knowledge" and to what "a reasonable person would not believe," however, the hearing officer reasoned that the alcohol Snyder consumed after the accident could not fully account for the results of his subsequent breath test.[2] On this basis, the hearing officer specifically found that Snyder's denial of *pre*-accident drinking was not credible.[3] Given her belief that some consumption must have occurred before the accident and her uncertainty concerning how much drinking occurred and when it occurred, the hearing officer went on to conclude that Snyder had failed to prove that his blood-alcohol level fell below the legal limit at the time of the accident.[4]

After Snyder appealed this decision to the superior court, the state conceded that Hearing Officer Gifford had erroneously placed the burden of proof on Snyder to prove that his blood-alcohol fell below the legal limit. The superior court remanded the case to the division for reconsideration under the correct burden. The court's remand order instructed the hearing officer to decide the issue on the existing record:

> [T]he Hearing Officer employed the wrong burden of proof by requiring Dennis Snyder to prove his blood-alcohol level was below .10 percent at the time he had the accident in this case. Accordingly, the case should be remanded for the Hearing Officer to make the sole determination of whether Dennis Snyder's blood-alcohol level was .10 percent or greater at the time he had the accident in this case. This determination shall be made on the existing record with the State bearing the burden of proving by a preponderance of the evidence whether Dennis Snyder's blood-alcohol level was .10 percent or greater at the time he had the accident[.]

On remand to the DMV, Snyder's case was reassigned to a new hearing officer, Kathy Kutchins, evidently because Hearing Officer Gifford had retired while the case was pending in the superior court. Nothing in the appellate record indicates that the parties received advance notice of the reassignment. Apparently, Hearing Officer Kutchins simply reviewed the record of the original hearing, came to a decision, and scheduled a telephonic proceeding to deliver her ruling. At the

---

1. Hearing Office Gifford stated:

   We move on to the area of whether or not the officer had reasonable grounds to believe that—reasonable grounds to believe that Mr. Snyder had operated a motor vehicle while intoxicated. In that area we're going to look at—to see whether or not there was sufficient evidence to show that he was below a .10 at the time of driving and to include that in this area. In reviewing the evidence and testimony here today, I don't have reason here to doubt that [Snyder] might have gone to his friend's house and drank. There is some conflicting testimony there in regards to when that drinking occurred and how much that drinking was.

2. Specifically, Hearing Officer Gifford stated: "There—however, I find that a reasonable person would not believe that four beers per person is a .155. It's common knowledge that, you know, if you've got .02 per drink—he's saying that you drank Miller over there with Mr. Scott at his house."

3. Hearing Officer Gifford continued:

   There is testimony here from Mr. Snyder that there was no drinking before. However, it's not—I find a hard time in finding that credible, Mr. Snyder, because you would have had to have consumed more in order for both the PBT and the breath test to put you up above.

4. Hearing Officer Gifford concluded:

   I don't know when that consumption occurred. My belief is that it probably occurred prior to or it wouldn't have shown on the intox because your drinking at your friend's house is around 8 or so and you'd tested in the intoximeter about two hours later. So, you know, your breath alcohol could be turning up from that— what you drank but you're also dissipating alcohol out and so you—there had to be more consumption there and—for it to be at a .155 on the PBT at the time the officer got there, I believe it had to be some earlier drinking prior to that, the drinking at a friend's house. And we put all this testimony together in regards to the drinking, I believe that there's insufficient grounds to believe that it was a .10 at the time—at below a .10 at the time of the driving. There is insufficient evidence to establish that.

proceeding, Hearing Officer Kutchins affirmed the original revocation order but based her decision on a new factual theory: emphasizing Snyder's prior DWI record, the new hearing officer expressly found that Snyder's claim of post-accident alcohol consumption was not believable:

> Regarding Mr. Snyder's claim that he consumed alcohol after he went in the ditch, I don't find that testimony credible. Mr. Snyder has four pr—three prior DWI convictions. I believe that, if he went in the ditch and he had nothing to drink before he went into the ditch as he claims, he would not go home and drink beer and, then, come back to the accident scene after he had consumed alcohol knowing the penalties for driving while intoxicated. I don't believe a person would do that with the knowledge that Mr. Snyder has. He also did not tell Trooper Baergen that he consumed any alcohol. And he says he was going to but he just got mixed up or confused but I—I don't believe that. I don't find him to be credible.

Despite Snyder's counsel's repeated attempts to argue the issue, Hearing Officer Kutchins refused to reconsider this credibility ruling and declined to explain her basis for rejecting the corroborating testimony of Scott.

Snyder renewed his appeal to the superior court; the superior court affirmed the second hearing officer's decision, concluding, among other things, that the second hearing officer neither exceeded the scope of the remand nor violated Snyder's right to due process by altering the original hearing officer's credibility determinations. Snyder appeals the superior court's ruling.

## III. DISCUSSION

■ In considering an administrative appeal from a decision issued by the superior court as an intermediate court of appeal, we review the agency's action directly, exercising our independent judgment.[5]

■ Snyder initially argues that Hearing Officer Kutchins exceeded the scope of the superior court's mandate on remand by re-

vising Hearing Officer Gifford's findings concerning the credibility of testimony presented personally before Gifford at the original hearing. We disagree. The superior court's remand order instructed the hearing officer to review the record and "make the sole determination of whether Dennis Snyder's blood-alcohol level was .10 percent or greater at the time he had the accident in this case." This language neither expressly nor implicitly precluded the hearing officer from reexamining the factual underpinnings of the original decision. And given that the original hearing officer's unavailability necessitated reassignment on remand, we think that the new hearing officer could reasonably construe the order to call for a reexamination of the weight and credibility of testimonial evidence.

■ Snyder alternatively maintains that the unannounced reassignment of the case on remand to a new hearing officer and the new hearing officer's unforewarned reversal of the original credibility findings violated his right to due process—both by denying him the opportunity to present live testimony to the new hearing officer and by creating an appearance of arbitrary action. We find these arguments persuasive.

Recently, in *Whitesides v. State, Department of Public Safety, Division of Motor Vehicles*, we considered the importance of live testimony in administrative revocation hearings where witness credibility may be at issue; we concluded:

> case law indicates that in-court testimony has persuasive characteristics absent from testimony given out of the presence of the trier of fact. Where the witness's truthfulness is disputed, demeanor can be important. In such cases, denying an in-person hearing denies a party an opportunity to present evidence in the most effective way possible.[6]

Here, a fair reading of the superior court's remand order establishes that its provision requiring "the Hearing Officer" to review the "existing record" on remand contemplat-

---

5. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

6. 20 P.3d 1130, 1137 (Alaska 2001).

ed that this review would be conducted by the original hearing officer—the same "Hearing Officer [who] employed the wrong burden of proof" at the original hearing. While Hearing Officer Gifford's unanticipated departure necessitated reassignment and may have justified a thorough reexamination of her findings, the need for reassignment and reexamination could not justify the new hearing officer's decision to reverse Gifford's credibility findings without personally hearing and observing the disputed testimony.

The state nevertheless contends that Snyder waived his objection to the new hearing officer's participation by "acquiescing" to her authority. Citing *Moffitt v. Moffitt*, the state insists that Snyder had "no right to sit back and await decision of the case before objecting to the procedure." [7] But in *Moffitt* we observed that a "successor judge lack[s] power to make new findings absent consent of [the] parties." [8] Here, the appellate record contains nothing to indicate that Snyder received prior notice that his case had been reassigned to a new hearing officer on remand or that the new hearing officer intended to reconsider the original credibility findings. And Hearing Officer Kutchins left Snyder no time to "sit back and await" her ruling: immediately upon convening the telephonic proceeding on remand, she announced the decision. Snyder's counsel thereafter did his best to question the decision, but Hearing Officer Kutchins soon made it known that she would not reconsider. On this record, we find no meaningful consent to the new hearing officer's participation and no waiver of Snyder's right to request live testimony.

We note that the absence of advance notice can be particularly damaging in an administrative revocation proceeding like Snyder's because the state was not represented by counsel at the initial hearing and the original hearing officer conducted the DMV's cross-examination. Hearing Officer Gifford thoroughly questioned Snyder and Scott on matters of particular concern to *her* assessment of credibility. Yet Hearing Officer Kutchins later based her own credibility ruling on different matters—Snyder's prior record and his failure to explain his post-accident drinking to Trooper Baergen. These matters had not been addressed in Hearing Officer Gifford's earlier questioning. Absent prior notice of Hearing Officer Kutchins's intent to alter the original credibility findings, then, Snyder had no reasonable opportunity to respond to the new hearing officer's concerns.

Considering the totality of these circumstances, we conclude that Hearing Officer Kutchins's impromptu revision of the original credibility findings was fundamentally unfair and deprived Snyder of his right to due process. The DMV's order revoking Snyder's license must therefore be vacated, and this case must be remanded for a new hearing.

Our decision to reverse and remand makes it unnecessary to address Snyder's alternative claims of error except to the extent that they question the state's ability to pursue the revocation proceedings on remand. Snyder raises three constitutional claims of this kind, contending that (a) the field sobriety tests that gave Trooper Baergen probable cause to subject Snyder to a breath test amounted to unlawful searches; (b) alternatively, the field sobriety tests amounted to custodial interrogation conducted without a prior *Miranda* warning or waiver; and (c) administrative revocation is barred by double jeopardy and collateral estoppel because the state dismissed DWI charges against Snyder based on the same incident. We conclude that these claims are meritless.[9]

---

7. 749 P.2d 343, 345 (Alaska 1988) (quoting *Townsend v. Gray Line Bus Co.*, 767 F.2d 11, 18 (1st Cir.1985)) (internal quotation marks omitted).

8. *Id.*

9. Specifically, we conclude that (a) Trooper Baergen had probable cause to suspect Snyder of DWI even before subjecting him to field sobriety testing; (b) Snyder waived his *Miranda* claim by

failing to argue it at the initial administrative hearing, *cf.* *Moreau v. State*, 588 P.2d 275, 279 (Alaska 1978) (finding that failure to assert Fourth Amendment claim at trial amounts to waiver absent an egregious violation); and (c) dismissal of Snyder's DWI charges provides no basis for collateral estoppel, *see* *Borrego v. State, Dep't of Pub. Safety*, 815 P.2d 360, 364 (Alaska 1991), and Snyder has failed to establish that an administrative license revocation amounts to a

## IV. CONCLUSION

The Division of Motor Vehicles' order revoking Snyder's license is VACATED, and this case is REMANDED with directions to conduct a new hearing at which Snyder has an opportunity to present live testimony.

CARPENETI, Justice, not participating.

criminal sanction that would be barred by double jeopardy. *See Davis v. Municipality of Anchor-age,* 945 P.2d 307, 311 (Alaska App.1997).