Frederick W. MORGAN III, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8639.

Court of Appeals of Alaska.

July 28, 2006.

Brant G. McGee and Kathleen Murphy, Assistant Public Defenders, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes and David W. Márquez, Attorneys General, Juneau, for the Appellee.

1. *Morgan I,* 54 P.3d at 339–340.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Frederick W. Morgan III appeals his conviction for second-degree sexual assault. This is the third time that his case has come before this Court.

Originally, Morgan's primary point on appeal was that the superior court should have allowed him to introduce evidence that the victim of the alleged sexual assault had knowingly made false accusations of sexual assault in the past. In our first decision in Morgan's case, *Morgan v. State (Morgan I )*, 54 P.3d 332 (Alaska App.2002), we remanded Morgan's case to the superior court with directions to re-evaluate Morgan's offer of proof regarding this matter. And, because Morgan was tried by a judge sitting without a jury, we told the superior court that, if the court decided that Morgan's proposed impeachment evidence should have been admitted at his trial, the court was to then re-evaluate Morgan's guilt or innocence in light of this new evidence.[1]

By the time Morgan's case returned to the superior court, his original trial judge had retired and was no longer available to hear the continued proceedings. A new judge— Superior Court Judge Larry R. Weeks—was assigned to Morgan's case.

After hearing Morgan's offer of proof, and applying the law that we announced in *Morgan I*, Judge Weeks concluded that Morgan should have been permitted to introduce evidence at his trial regarding a prior incident in which the victim (1) privately accused another man of raping her (that is, she voiced the accusation to a friend rather than to the police), but then (2) withdrew the accusation a few days later and apologized to the man involved. *See Morgan v. State (Morgan II)*, Alaska App. Memorandum Opinion No. 4981 (April 20, 2005), slip opinion at 2; 2005 WL 901769 at *1.

Following this ruling, Judge Weeks reviewed the record of Morgan's trial, weighing

the evidence presented at the trial in light of the new impeachment evidence that he had just heard, to re-assess whether the State had proved Morgan's guilt beyond a reasonable doubt. Judge Weeks concluded that, even with the new evidence concerning the false accusation of rape, the evidence as a whole still proved Morgan's guilt beyond a reasonable doubt. *Morgan II*, Memorandum Opinion No. 4981 at 2–3, 2005 WL 901769 at *1. Judge Weeks therefore upheld Morgan's conviction, and the case came to this Court a second time.

In *Morgan II*, we upheld the renewed proceedings in most respects, but we noted that Judge Weeks's entry into the case had created a new legal issue: Given Judge Weeks's ruling that the impeachment evidence should have been admitted at Morgan's trial, and given the fact that Morgan's original trial judge was now unavailable, was it lawful for Judge Weeks (or any other new judge) to re-assess the totality of the evidence and re-determine Morgan's guilt? Or, was Morgan entitled to a new trial—a trial in which a single fact-finder would hear the entirety of the testimony (that is, actually view the witnesses as they gave their testimony)?

We deferred a final decision in Morgan's case until the parties briefed this issue. *Morgan II*, Memorandum Opinion No. 4981 at 18, 2005 WL 901769 at *9. We have now received and considered the parties' supplemental briefs, and we have again reviewed the proceedings in the superior court (both the original trial and the proceedings on remand).

As we explain in more detail here, we conclude that Alaska Criminal Rule 25(b) authorizes a mid-trial substitution of judges, even in a judge-tried case—that is, even in a case where the judge is sitting as the trier of fact. But the authority granted by Rule 25(b) is circumscribed by the constitutional guarantee of due process. Given the facts of Morgan's case, we conclude that the new impeachment evidence was potentially very important to assessing the credibility of the victim and the overall credibility of the State's allegations—so potentially important that it was improper for Judge Weeks to re-

determine Morgan's guilt by simply reviewing the record of the trial and factoring in the new evidence. Under the facts of Morgan's case, due process requires that Morgan receive a new trial in which the finder of fact can personally observe the witnesses as they give their testimony.

*A brief summary of the evidence presented at Morgan's trial, and a description of the impeachment evidence that Judge Weeks ruled should have been admitted at that trial*

Morgan was accused of second-degree sexual assault under AS 11.41.420(a)(3)(B) and (3)(C). The State alleged (1) that Morgan engaged in sexual penetration with a woman, T.F.; (2) that T.F., because of extreme intoxication, was either incapacitated or unaware that a sexual act was occurring; and (3) that Morgan knew that T.F. was incapacitated or unaware that a sexual act was occurring.

According to T.F.'s testimony, she passed out on Morgan's couch after several hours of drinking with Morgan's wife and another friend. T.F. awoke to find Morgan engaging in sexual intercourse with her, and she immediately pushed him off. T.F. called her mother, who persuaded her to contact the police and accompanied her to the hospital for a sexual assault examination.

Morgan initially denied having sexual relations with T.F. On the night of the incident, Morgan claimed that he had "never touched her". But at trial, Morgan conceded that he had engaged in sexual penetration with T.F. Morgan now asserted that his sexual relations with T.F. had been consensual.

Morgan's original trial judge resolved this conflict in favor of T.F.'s version of events; he convicted Morgan of second-degree sexual assault.

One aspect of T.F.'s testimony at Morgan's trial became more significant following our remand of Morgan's case to the superior court. During cross-examination by Morgan's attorney, T.F. was questioned about an alleged earlier incident in which she falsely accused a man, Chris Bevis, of rape. T.F. declared that she had never accused Bevis of rape—and that anyone who said the contrary would be lying.

Although Morgan's trial judge allowed the defense attorney to cross-examine T.F. regarding her alleged prior false accusation, the trial judge refused to allow the defense attorney to present extrinsic evidence on this point (*i.e.*, extrinsic evidence tending to show that T.F. had in fact made a false accusation of rape).

As we explained at the beginning of this opinion, the trial judge's refusal to allow Morgan to present extrinsic evidence on this point was the primary issue originally raised in Morgan's appeal. In *Morgan I*, we clarified the rules governing the admission of this evidence, and we directed the superior court to re-evaluate the admissibility of the extrinsic evidence that Morgan offered.

Pursuant to our decision in *Morgan I*, the superior court (with Judge Weeks now presiding) held an evidentiary hearing to re-examine the extrinsic evidence tending to show that T.F. had knowingly made a prior false accusation of rape. At this evidentiary hearing, Judge Weeks heard the testimony of two witnesses, Sally Garton and Chris Bevis.

Garton testified that, on one occasion, T.F. came home early in the morning and claimed that she had been raped by Bevis at a party. Following Garton's testimony, Bevis took the stand and testified that, after a night of drinking, he and T.F. engaged in consensual sexual intercourse at a party. Bevis further testified that T.F. later apologized to him for rumors that this sexual encounter had been a rape. Bevis could not remember whether T.F. or Garton had started this rumor.

After hearing this testimony, Judge Weeks concluded that, under the standard announced by this Court in *Morgan I*, Morgan should have been allowed to present this testimony at his trial. In other words, Judge Weeks concluded that, more likely than not, T.F. had knowingly made a false accusation of rape against Bevis.

Although Judge Weeks did not explicitly say this, his conclusion that T.F. probably falsely accused Bevis of rape also suggests that T.F. may have committed perjury when, during her cross-examination at Morgan's trial, she denied having accused Bevis of rape.

Nevertheless, Judge Weeks again found Morgan guilty of sexual assault. After reviewing the evidence presented at Morgan's trial, and weighing the probative force of the impeachment evidence that he had heard at the evidentiary hearing, Judge Weeks concluded that the evidence (taken as a whole) still established Morgan's guilt beyond a reasonable doubt.

*Alaska law governing the substitution of judges in a criminal trial, and why we conclude that Judge Weeks's re-evaluation of Morgan's guilt was governed by Criminal Rule 25(b)*

Alaska Criminal Rule 25 contains two provisions that authorize a new judge to assume judicial duties in a criminal case if circumstances prevent the first judge from continuing. Rule 25(b) covers situations that arise during trial, while Rule 25(c) covers situations that arise after the verdict. The pertinent portions of Criminal Rule 25 read:

Judge—Disqualification or Disability

. . .

(b) *During Trial.* If a judge holding superior court be prevented during a trial from continuing to preside therein, the presiding judge or the chief justice of the supreme court shall designate another judge of the superior court to ... complete [the] trial, as if [that] other judge had been present and presiding from the commencement of [the] trial, [but only if there is a complete] stenographic or electronic record of [the] trial ... so that the [new] judge ... may become familiar with the previous proceedings at [the] trial.

(c) *After Verdict.* If by reason of absence from the district, [or] death, sickness[,] or other disability, the judge before whom the action has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if the other judge is satisfied that a judge who did not preside at the trial cannot perform those duties or that [a new trial] is appropriate for any other reason, that judge may grant a new trial.

As we noted in *Morgan II*, Morgan's case arguably presents a hybrid situation involving both Rule 25(b) and Rule 25(c).

Criminal Rule 25(c)—the post-verdict rule—governs Judge Weeks's assignment to hold the post-trial evidentiary hearing and then decide the issue of whether Morgan should have been allowed to present evidence of T.F.'s prior false accusation of rape. The parties do not question Judge Weeks's authority to perform these duties.

But once Judge Weeks decided that Morgan should have been allowed to present this evidence, the next step was to decide whether the totality of the evidence (*i.e.*, the evidence presented at Morgan's trial, augmented by this new evidence) still established Morgan's guilt beyond a reasonable doubt.

One might argue that this second step of the process was also governed by Criminal Rule 25(c) because Judge Weeks's re-assessment of the prior verdict in light of the newly presented impeachment evidence appears to be similar to the task that a judge must perform when a defendant asks for a new trial based on newly discovered evidence. See *Shapiro v. State*, 793 P.2d 535, 536–37 (Alaska App.1990), where this Court relied on Criminal Rule 25(c) as the basis for a substitute judge's authority to decide a defendant's motion for a new trial based on newly discovered evidence.

But a judge who decides a motion for a new trial based on newly discovered evidence begins with the presumption that the defendant's trial was fair and that the verdict rendered at that trial should stand. Because of this presumption, it is the defendant's burden to show that the new evidence is in fact newly discovered, and that this new evidence (if presented) probably would lead to the defendant's acquittal.[2]

In contrast, Judge Weeks's task in Morgan's case was to re-evaluate the evidence as a whole without presuming the validity of the earlier verdict. Judge Weeks was obliged to apply the presumption of innocence that governs criminal prosecutions, and to decide anew whether the evidence established Morgan's guilt beyond a reasonable doubt. Thus, the task confronting Judge Weeks was essentially a pre-verdict inquiry. We accordingly conclude that Criminal Rule 25(b) governed his authority to perform this task.

*Why we conclude that Criminal Rule 25(b) allows pre-verdict substitution of judges in a judge-tried case, but only when the substitution does not violate the parties' right to due process of law*

■ Ninety years ago, in *Freeman v. United States*, 227 F. 732 (2nd Cir.1915), the Second Circuit declared that the law forbade the pre-verdict substitution of judges, even in jury trials—that is, even in trials where the judge was not sitting as the trier of fact. The Second Circuit stated that the very notion of a jury trial required an unchanging combination of judge and jury, "[both] of whom must remain identical from the beginning [of the trial] to the end".[3] But that is no longer the law. The federal government and many state governments have either enacted rules or have construed their common law to allow a mid-trial substitution of judges—at least in jury trials, where the judge is not the trier of fact.[4]

Alaska Criminal Rule 25(b) (the pre-verdict portion of the rule) obviously authorizes the substitution of judges in the middle of a criminal trial. Moreover, Rule 25(b) does not explicitly limit the mid-trial substitution of

**2.** *James v. State*, 84 P.3d 404, 406–07 (Alaska 2004); *Salinas v. State*, 373 P.2d 512, 514 (Alaska 1962); *Gonzales v. State*, 691 P.2d 285, 286–87 (Alaska App.1984).

**3.** *Freeman*, 227 F. at 759.

**4.** *See* Federal Criminal Rule 25(a); *People v. Espinoza*, 3 Cal.4th 806, 12 Cal.Rptr.2d 682, 838 P.2d 204, 216–18 (1992); *Eaton v. State*, (unpublished), 2000 WL 628330 at *2 (Del.2000); *McIntyre v. State*, 266 Ga. 7, 463 S.E.2d 476, 479 (1995), *federal habeas corpus denied, McIntyre v. Williams*, 216 F.3d 1254 (11th Cir.2000); *State v. Misner*, 410 N.W.2d 216, 218–19 (Iowa 1987); *Commonwealth v. Carter*, 423 Mass. 506, 669 N.E.2d 203, 206–08 (1996); *People v. Thompson*, 90 N.Y.2d 615, 665 N.Y.S.2d 21, 687 N.E.2d 1304, 1306–08 (1997); *State v. McKinley*, 7 Ohio App.3d 255, 455 N.E.2d 503, 506–07 (1982); *Ramirez v. State*, 822 S.W.2d 240, 246 (Tex.App. 1991); *Medina v. State*, 743 S.W.2d 950, 960 (Tex.App.1988).

judges to jury trials. Rather, the rule refers to the substitution of judges "during a trial".

The State points out that Rule 25(c) (the post-verdict portion of the rule) appears to apply to both jury trials and bench trials—because Rule 25(c) speaks of the substitution of judges "after a verdict or [a] finding of guilt".

In recent times, the word "verdict" has come to mean the final decision at a trial, whether that decision is rendered by a judge or a jury.[5] Indeed, both this Court and the Alaska Supreme Court have often used the word "verdict" when referring to a judge's decision in a bench trial.[6] But in its original, narrower meaning, the word "verdict" refers only to decisions rendered by a jury.[7] The phrasing of Rule 25(c) appears to be premised on this distinction between a "verdict" (*i.e.*, a decision rendered by a jury) and a "finding of guilt" (*i.e.*, a decision rendered by a judge in a bench trial). Thus, Rule 25(c) apparently applies to both jury trials and bench trials. And, by implication (under the principle of *noscitur a sociis*[8]), Rule 25(b) would also apply to both types of trial.

Morgan argues, however, that even though Criminal Rule 25(b) may apply to both jury trials and bench trials, the due process clause limits the scope of this rule. In particular, Morgan contends that one important aspect of due process of law is that the trier of fact must personally hear all of the testimony upon which the verdict hinges. Thus, the pre-verdict substitution of judges is generally limited to jury trials—*i.e.*, trials in which the judge is not the trier of fact.

Morgan acknowledges that there may be rare instances in which Criminal Rule 25(b) authorizes a substitution of judges in a bench trial, but only in situations where the new judge is not required to resolve disputed issues of fact that hinge, in whole or in part, on the testimony of witnesses heard by the predecessor judge. Because Judge Weeks's action in Morgan's case falls outside this narrow exception, Morgan argues that the substitution of judges in his case was improper.

The State agrees that the due process clause limits the scope of Criminal Rule 25(b). The State has forthrightly brought to our attention the Alaska Supreme Court's decisions in *Alexander v. State*, 611 P.2d 469 (Alaska 1980), and *Snyder v. Department of Public Safety*, 43 P.3d 157 (Alaska 2002).

In *Alexander*, our supreme court held that, as a matter of due process, a single trier of fact must hear all of the evidence bearing on disputed issues of fact raised by a pre-trial motion.[9] Compare *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), where the United States Supreme Court rejected a due process challenge to a federal statute which authorized a district court judge to decide a suppression motion based on testimony heard by a magistrate; the Supreme Court declared that the guarantee of due process required only "a hearing appropriate to the nature of the case". *Id.*, 447 U.S. at 677, 100 S.Ct. at 2413.

In *Snyder*, the Alaska Supreme Court applied this principle of due process to an administrative hearing officer's decision regarding the administrative revocation of a driver's license. *Snyder* is analogous to

---

**5.** Bryan A. Garner (editor in chief), *Black's Law Dictionary* (8th ed.2004), p. 1592.

**6.** *See, e.g., Lee v. Anchorage*, 70 P.3d 1110, 1113 (Alaska App.2003); *Morgan v. State*, 54 P.3d 332, 341 (Alaska App.2002) (Coats, C.J., concurring); *Wasserman v. Bartholomew*, 38 P.3d 1162, 1166 (Alaska 2002); *Grinols v. State*, 10 P.3d 600, 623 (Alaska App.2000); *Taylor v. State*, 977 P.2d 123, 126 (Alaska App.1999); *State v. Case*, 928 P.2d 1239, 1242 (Alaska App.1996) (Mannheimer, J., concurring); *Adrian v. Adrian*, 838 P.2d 808, 810 n. 3 (Alaska 1992); *Michael v. State*, 767 P.2d 193, 202 (Alaska App.1988); *Jones v. Anchorage*, 754 P.2d 275, 277 (Alaska App.1988); *Alexander v. State*, 712 P.2d 416, 420 (Alaska App.1986);

*Dolchok v. State*, 639 P.2d 277, 284 (Alaska 1982).

**7.** Garner, *Black's Law Dictionary* (8th ed.2004), p. 1592.

**8.** *Noscitur a sociis*—literally, "it is known by its associates"—is the principle of statutory construction which directs a court to construe an unclear or ambiguous word or phrase in light of the words immediately surrounding it. *See* Garner, *Black's Law Dictionary* (8th ed.2004), p. 1087.

**9.** *Alexander*, 611 P.2d at 474.

Morgan's case in significant ways—because in *Snyder* an appellate court directed a lower tribunal to reconsider its decision, and the original hearing judge was no longer available to conduct the renewed proceedings.

The Department of Public Safety revoked Snyder's driver's license based on the result of a breath test he took following a motor vehicle accident.[10] Snyder then invoked his right to administrative review of the Department's action under AS 28.15.166.

At the administrative hearing, Snyder testified that, even though he was intoxicated at the time of the breath test, he had not been intoxicated at the time of the motor vehicle accident. Snyder asserted that the accident had occurred some two hours before the breath test was administered. Snyder further declared that he had had nothing to drink before the accident, and that all of his alcohol consumption occurred after the accident—after he went to the home of a friend to summon help, and then waited for the authorities.[11]

The original hearing officer found that Snyder's testimony about the post-accident drinking was credible, but the hearing officer also found that, even though Snyder's account of his post-accident drinking was truthful, Snyder's test result (.147 percent blood alcohol) could not be fully explained by the amount of alcohol that Snyder said he consumed at his friend's house. Thus, the original hearing officer concluded, Snyder had not been telling the truth when he asserted that he had had nothing to drink before the accident. The hearing officer then upheld the administrative revocation of Snyder's driver's license, ruling that Snyder had failed to prove that his blood alcohol level had been below the legal limit at the time of the accident.[12]

By placing the burden of persuasion on Snyder—that is, by requiring Snyder to affirmatively prove that he was driving with a lawful amount of alcohol in his blood, rather than requiring the Department to affirmatively prove that Snyder was driving with an unlawful amount of alcohol in his blood—the hearing officer committed legal error.[13] Accordingly, when Snyder appealed to the superior court, the State conceded error, and the superior court directed the hearing officer to reconsider the decision.[14]

But by the time Snyder's case returned to the Department of Public Safety, Snyder's original hearing officer had retired, and a new hearing officer was assigned to conduct the renewed proceedings. Without notice to the parties, this new hearing officer simply reviewed the record of the earlier proceedings and then came to her own conclusion about the truthfulness of Snyder's testimony.[15] Based on Snyder's prior record of driving under the influence, and based on the fact that Snyder had failed to mention his post-accident drinking to the state trooper who administered the breath test, the new hearing officer reached a different conclusion regarding the credibility of Snyder's hearing testimony: The new hearing officer concluded that Snyder had been lying when he testified about drinking at the home of a friend after the accident.[16] And, on this basis, the new hearing officer upheld the administrative revocation of Snyder's driver's license.[17]

The supreme court held that the new hearing officer's re-assessment of the credibility of Snyder's testimony violated Snyder's right to due process of law. The supreme court explained:

> Recently, in *Whitesides v. State, Department of Public Safety* . . ., we considered the importance of live testimony in administrative revocation hearings where witness credibility may be at issue; we concluded:
>
> > . . . that in-court testimony has persuasive characteristics absent from testimo-

---

10. *Snyder,* 43 P.3d at 158. *See* AS 28.15.165.

11. *Snyder,* 43 P.3d at 158–59.

12. *Id.* at 159.

13. *Id.*

14. *Id.*

15. *Id.* at 159–160.

16. *Id.* at 160, 161.

17. *Id.* at 160.

ny given out of the presence of the trier of fact. Where [a] witness's truthfulness is disputed, demeanor can be important. In such cases, denying an in-person hearing denies a party an opportunity to present evidence in the most effective way possible.

*Whitesides,* 20 P.3d 1130, 1137 (Alaska 2001).

Here, a fair reading of the superior court's remand order establishes that [the court] contemplated that this review would be conducted by the original hearing officer—the same "Hearing Officer [who] employed the wrong burden of proof" at the original hearing. While [that hearing officer's] departure necessitated reassignment [of the case] and may have justified a thorough reexamination of [the earlier] findings, the need for reassignment and reexamination could not justify the new hearing officer's decision to reverse [the former hearing officer's] credibility findings without personally hearing and observing the disputed testimony.

*Snyder,* 43 P.3d at 160–61.

The supreme court's decision in *Snyder* supports the conclusion that Alaska law allows the substitution of judges in judge-tried cases like Morgan's. But the *Snyder* decision clearly demonstrates that the due process clause imposes substantial limits on the substitution of judges.

The State concedes as much. However, the State argues that those limits were not violated in Morgan's case.

*The State's argument that Judge Weeks could properly re-assess Morgan's guilt or innocence without personally hearing the witnesses who testified at Morgan's trial*

■ The State contends that Morgan's case presents a situation where Judge Weeks could properly re-assess Morgan's guilt or innocence by simply reviewing the record of Morgan's trial. In particular, the State argues that even when the resolution of factual disputes hinges on a determination of witness credibility, courts can sometimes decide the issue of credibility without personally observing the witnesses. In support of this argu-

ment, the State cites the words of the Ninth Circuit in *Carbo v. United States:*

> Credibility involves more than demeanor. It [com]prehends the over-all evaluation of testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence.... The inquiry then [should be] how importantly demeanor appears to loom in making the necessary credibility determinations.

*Carbo,* 314 F.2d 718, 749 (9th Cir.1963).

The State asserts that "demeanor [was] not a significant factor in evaluating [the] credibility" of the important witnesses at Morgan's trial. Thus, according to the State, Judge Weeks could lawfully re-assess Morgan's guilt or innocence without personally hearing the testimony and observing the demeanor of those witnesses.

The State notes that Morgan conceded at trial that he had sexual relations with T.F. on the night in question. The primary disputed issue at Morgan's trial was whether the sexual penetration was consensual (as Morgan claimed) or whether, instead, Morgan knew that T.F. was incapacitated and/or unaware that the sexual penetration was occurring (as the State claimed).

The State asserts that it presented an overwhelming case on this disputed issue. In making this assertion, the State relies on four main factors. First, T.F. testified that she never consented to have sexual relations with Morgan. Second, a medical examination showed that T.F. had markings and injuries that were consistent with her claim of non-consensual intercourse. Third, T.F. promptly reported the sexual assault to her mother and then, after talking to her mother, T.F. reported it to the authorities. And fourth, Morgan gave inconsistent accounts of his interaction with T.F. (When T.F.'s mother arrived at Morgan's house, Morgan declared that he had never touched T.F., and that she was lying. Later, when Morgan spoke to the police, he said that T.F. had made sexual advances to him, and that he had nearly had sex with T.F., but he stopped when a third person entered the room. By the time of trial, Morgan's attorney conceded

that Morgan had had sexual intercourse with T.F.)

It is true that there was substantial evidentiary support for the State's case. But the third prong of the State's proof—T.F.'s prompt report of sexual assault—potentially loses a significant degree of its probative force if the trier of fact believes, as Judge Weeks believed, that there is credible evidence that T.F. had previously falsely accused a man of rape.

We acknowledge that Judge Weeks, in his decision, pointed out reasons why the circumstances of that prior false accusation are arguably distinguishable from the circumstances of Morgan's case. But the circumstances of the two cases are analogous in certain key respects. In particular, both cases involved situations where T.F. engaged in heavy drinking in a group situation and then accused a man of taking sexual advantage of her.

Moreover, as we pointed out earlier, when Judge Weeks found that T.F. had probably falsely accused Chris Bevis of rape, he implicitly found that T.F. may have committed perjury when, at Morgan's trial, she expressly denied accusing Bevis of rape.

As to the fourth prong of the State's proof—Morgan's inconsistent and changing statements about the episode—this evidence can indeed be interpreted as demonstrating Morgan's consciousness of guilt. But the question is: guilt of what? Morgan might have felt guilty because he sexually assaulted an incapacitated woman. On the other hand, Morgan might have felt guilty because he drunkenly committed adultery with one of his wife's friends.

By pointing out these potential weaknesses in the State's case, we do not mean to suggest that we think T.F. was lying or that Morgan should be found not guilty. Our task is not to determine the credibility of the witnesses at Morgan's trial, or to determine Morgan's probable guilt or innocence. Instead, our duty is to determine whether, consistent with the demands of due process, Judge Weeks could properly re-determine Morgan's guilt or innocence without personally hearing the witnesses presented by the State. This, in turn, hinges on the question of whether the demeanor of those witnesses was a trivial factor in assessing their credibility—so that Judge Weeks could resolve the disputed issues of fact without seeing those witnesses.

Given the facts of Morgan's case, we conclude that T.F.'s credibility could not be determined from the cold record. A proper reassessment of Morgan's guilt or innocence required the trier of fact to personally hear the testimony that was important to the assessment of T.F.'s credibility—that is, the testimony of T.F. and the various witnesses who spoke to her or interviewed her following her report of the sexual assault.

*Why we conclude that Morgan is entitled to a new trial*

Conceivably, Criminal Rule 25(b) may authorize Judge Weeks to selectively re-summon and hear the testimony of the pertinent witnesses. Although Rule 25(b) does not expressly authorize this procedure—*cf.* New Jersey Court Rule 1:12–3(c), which authorizes a substituted judge to "direct the recall of any witness"—some states have interpreted their judge-substitution rules to implicitly authorize a successor judge to recall selected witnesses when this is necessary to a fair decision. *See Stevens v. Hartford Accident and Indemnity Co.,* 29 Conn.App. 378, 615 A.2d 507, 511–12 (1992); *In re Marriage of Seyler,* 559 N.W.2d 7, 9 (Iowa 1997).

But in Morgan's case, the testimony of the witnesses in question constitutes the greater portion of Morgan's trial. In this circumstance, we conclude that Morgan should receive a new trial.

The judgement of the superior court is REVERSED. Morgan is entitled to a new trial.

COATS, Chief Judge, concurring.

COATS, Chief Judge, concurring.

Morgan's conviction for sexual assault in the second degree rested on the testimony of T.F. In his first appeal, Morgan argued that the trial judge, Superior Court Judge Thomas Jahnke, improperly excluded the testimony of witnesses who would have testified that

T.F. had made prior false accusations of sexual assault against other men. At his trial, Morgan questioned T.F. about whether she had falsely accused a man, Chris Bevis, of rape. T.F. denied that she had ever accused Bevis of rape and stated that anyone who had said she had made such an accusation would be lying.

In Morgan's first appeal, we concluded that Judge Jahnke had applied the wrong standard in excluding the testimony of witnesses who, according to the offer of proof, would have testified that T.F. had made prior false accusations of sexual assault against other men.[1] We remanded the case to the superior court to determine whether the evidence of T.F.'s alleged false accusations should have been admitted at Morgan's trial. We directed the court to hear testimony from Morgan's proposed witnesses and to determine if Morgan proved by a preponderance of the evidence that T.F. had knowingly made false accusations of sexual assault. In the event that Morgan presented evidence which met this standard, we directed the court to "re-determine Morgan's guilt in light of this evidence."[2] Otherwise, the court was to affirm Morgan's conviction.[3]

But our decision remanding the case was predicated on the fact that Morgan had waived a jury trial and elected to have his case tried solely before Judge Jahnke. That is, our remand was based upon the assumption that Judge Jahnke could hear the evidence that T.F. had made prior false accusations and determine whether that evidence was admissible under the proper legal standard. If he determined that the evidence was admissible, Judge Jahnke could redetermine Morgan's guilt, considering this additional evidence.

But Judge Jahnke retired and was unavailable to rehear the case. The case was therefore assigned to Superior Court Judge Larry R. Weeks. Following an evidentiary hearing, at which Morgan's witnesses testified, Judge Weeks concluded that Morgan had proven by a preponderance of the evidence that T.F. had falsely accused Chris Bevis of rape and that Morgan should have been allowed to present this testimony at his trial. Judge Weeks then reviewed the record of the evidence presented at Morgan's trial and the evidence which he had observed in the evidentiary hearing and concluded that the evidence established Morgan's guilt beyond a reasonable doubt.

The procedure that Judge Weeks adopted conformed to our original decision remanding this case to the superior court. But our original decision was based on the assumption that Judge Jahnke, the sole finder of fact in Morgan's trial, would be able to reevaluate the evidence. Had Morgan been convicted in a jury trial, we would have followed a different procedure. We would have remanded the case to the superior court to determine whether Morgan's evidence that T.F. had falsely accused Bevis of rape was admissible under the proper legal standard. If the superior court determined that the evidence was admissible, we would have directed the superior court to determine, in light of the evidence presented at trial, whether the exclusion of this evidence might have changed the verdict in Morgan's case. We would have then directed the superior court to grant Morgan a new trial if the evidence might have changed the verdict.

It is clear that excluding the evidence that T.F. had falsely accused Chris Bevis of rape could not be harmless error. If a jury believed this testimony, it would mean that T.F. had not only made a prior false accusation but had also lied at Morgan's trial about making that false accusation. And T.F.'s testimony was critical to convicting Morgan. Therefore, if Morgan had been convicted in a jury trial, his conviction would have been reversed.

Because Judge Jahnke was not available to reevaluate Morgan's case, it seems to me that we must evaluate this case in a similar manner to the procedure which we would use in reviewing a jury trial. Judge Jahnke erred in excluding the evidence that T.F. had falsely accused Bevis of rape. There is no

1. *Morgan v. State*, 54 P.3d 332, 337, 340 (Alaska App.2002).

2. *Id.* at 340.

3. *Id.*

basis for us to conclude that the exclusion of this evidence did not affect the outcome of Morgan's trial. We must accordingly reverse Morgan's conviction.